## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**MAKAYLA HARRIS, COLLEEN LEWIN,**
and **TIFFANY WILLIAMS** individually, and
on behalf of others similarly situated,

                   Plaintiff,

vs.

**STARTEK USA, INC.,** a corporation,

                   Defendant.

Case No.:

Hon.:

Mag.:

---

### COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Makayla Harris ("Plaintiff Harris"), Colleen Lewin ("Plaintiff Lewin"), and Tiffany Williams ("Plaintiff Williams") (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant Startek USA, Inc. (hereinafter referred to as "Defendant"), and state as follows:

### INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as well as the following state laws:

    a.    The Minimum Wage Act of the State of Arkansas, A.C.A. §§ 11-4-201, *et seq.* ("Arkansas Wage Act");

    b.    The Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq.* ("OMFWSA");

    c.    The Virginia Minimum Wage Act, Va. Code Ann. §§40.1-28, *et seq.*, and the Virginia Overtime Wage Act, Va. Code Ann. §§ 40.1-29.2, *et seq.*

2.      According to Defendant's website, Defendant is in the call center services business, offering customers of its clientele – "some of the largest companies in the world[,]" like AT&T and IBM – live solutions and answers to various problems and inquiries "across all customer contact channels."[1]

3.      In order to provide the aforementioned service, Defendant employs hourly (non-exempt) customer service representatives with a number of job titles, including, but not limited to: Customer Service Representative and Engagement Specialist (hereinafter collectively referred to as "CSRs"). Over 40,000 employees work for Defendant worldwide at brick-and-mortar call centers and remotely at virtual call centers.[2] Within the United States, Defendant employs CSRs, including Plaintiffs, at call centers in Ohio, South Carolina, Virginia, Missouri, Arkansas, Indiana, Texas, Georgia, Jamaica and Colorado (where Defendant's headquarters are located).

4.      Regardless of the specific job title, all CSRs are: paid on an hourly basis; are classified as non-exempt employees; use the same timekeeping system(s); use many (if not all) of the same computer programs; are subject to the same relevant timekeeping and attendance policies (including Defendant's unlawful time rounding policy); and have the primary job duty of providing assistance to Defendant's clients' customers.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees of some abuses that are prevalent in the industry. *See* DOL Fact Sheet #64: Call   Centers   under   the   Fair   Labor   Standards   Act   (FLSA),   available   at

---

[1]      *See* https://www.startek.com/careers (last visited Jan. 28, 2022); *see also* https://www.startek.com/omnichannel (last visited Jan. 28, 2022).
[2]      *See* https://www.startek.com/we-are-startek (last visited Jan. 28, 2022); *see also* https://www.startek.com/careers (last visited Jan. 28, 2022).

*https://www.dol.gov/whd/regs/compliance/whdfs64.pdf*. One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

6.   The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/ specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

7.   Defendant does not compensate its CSRs, like Plaintiffs, for all work performed. Instead, Defendant requires its CSRs to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system. This policy, along with Defendant's herein described rounding policy, results in CSRs not being paid for all time worked.

8.   The individuals Plaintiffs seek to represent in this action are current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of federal and state law.

9.   Defendant knew or could have easily determined how long it takes its CSRs to complete the pre-shift start-up/log-in process, the post-shift computer log-out process, and the lunchbreak work duties, and could have properly compensated Plaintiffs and other CSRs for the work that they performed, but did not.

10.   Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class were violated, an award of unpaid wages, an award of liquidated damages, injunctive

and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

12.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

13.     Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

14.     Plaintiffs' state-law claims originate from the same facts that form the basis of their federal claims.  Thus, the Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §1367.

15.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Colorado, employs individuals within the state of Colorado, is registered with the Colorado Secretary of State, and maintains its principal place of business in the state of Colorado.

17.     Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in the state of Colorado and has established

minimum contacts sufficient to confer jurisdiction over it; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs CSRs in this district, conducts business in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

19.     Plaintiff Makayla Harris is a Virginia resident who worked for Defendant as an hourly CSR in Defendant's Lynchburg, Virginia call center from approximately September 30, 2019 until approximately March 2020. Plaintiff Harris worked for Defendant as an hourly remote CSR from approximately March 2020 until approximately July 1, 2021. Defendant compensated Plaintiff Harris through the payment of an hourly rate, most recently $10.76 per hour. Plaintiff Harris signed a consent to join this collective action lawsuit, **Exhibit A**.

20.     Plaintiff Colleen Lewin is an Ohio resident who worked for Defendant as an hourly CSR in Defendant's Mansfield, Ohio call center from approximately January 14, 2019 until approximately March 2020. Plaintiff Lewin worked for Defendant as an hourly remote CSR from approximately March 2020 until approximately October 2020. Defendant compensated Plaintiff Lewin through the payment of an hourly rate, most recently $10.00 per hour. Plaintiff Lewin signed a consent form to join this collective action lawsuit, **Exhibit B**.

21.     Plaintiff Tiffany Williams is an Arkansas resident who worked for Defendant as an hourly CSR in Defendant's Hot Springs, Arkansas call center from approximately December 2019 until approximately March 2020. Plaintiff Williams worked for Defendant as an hourly remote CSR from approximately March 2020 until approximately April 2020. Defendant compensated

5

Plaintiff Williams through the payment of an hourly rate, most recently $10.50 per hour. Plaintiff Williams signed a consent form to join this collective action lawsuit, **Exhibit C**.

22.     Defendant Startek USA, Inc. is a Colorado Corporation (Identification Number 19871734542) with its headquarters and principal office located at 4th Floor Suite 485, 6200 South Syracuse Way, Greenwood Village, CO 80111. Defendant Startek USA, Inc.'s Registered Agent for service of process is C T Corporation System 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112-1268.

23.     Defendant's website notes that "providing great customer service" ensures that Defendant's customers "are well taken care of and [that] their brand is protected and promoted."[3] Defendant considers its CSRs to be "champion[s]" for its customers' brands. *Id*.

24.     Upon information and belief, Defendant has employed thousands of CSRs – including Plaintiffs – within the past three years and across the United States to assist its customers with customer service needs.

## GENERAL ALLEGATIONS

25.     CSRs are typically paid at a rate of approximately $10.00 to $10.76 per hour.

26.     Defendant's CSR positions have rigid schedules that require employees to work at least eight (8) hours per day (with a 30 minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek. However, in some workweeks Defendant's CSRs work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendant's CSRs strictly adhere to Defendant's baseline forty (40) hour schedule, the CSR schedule results in CSRs working overtime on a weekly basis.

27.     Prior to being hired, CSRs receive an offer from Defendant that sets forth the

---

[3] *See* https://www.startek.com/careers (last visited Jan. 28, 2022).

requirements of a CSR, the job duties, and the offered rate of pay.

28.     Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or other payroll records.

29.     Plaintiffs received such an offer from Defendant to serve as a CSR, and they accepted Defendant's offer with the understanding that their base wage rate would be paid as promised.

30.     Plaintiffs performed under their contract with Defendant by carrying out their job duties and responsibilities. More specifically, Plaintiffs provided customer service support to Defendant's clients' customers via in-bound, and occasionally out-bound, calls. They additionally performed the required unpaid off the clock work explained below.

31.     Once hired, Defendant provides all CSRs with training on, *inter alia*, how to carry out their day to day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time in Defendant's timekeeping system; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's CSRs receive is substantially, if not entirely, the same and all CSRs are subject to the same disciplinary policies.

32.     Plaintiffs and other similarly situated CSRs are instructed to be call ready the moment their scheduled shift starts. This requires Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins. Defendant enforces this policy and procedure by routinely evaluating, and at times disciplining, CSRs based on schedule adherence metrics that track the amount of time they spend clocked in but are unavailable to field

calls. Thus, Defendant forces its CSRs to perform the boot up and login process before clocking into Defendant's timekeeping system Asure Force/NexTime.

33.     Upon information and belief, Defendant's CSRs all use a time clock timekeeping system during training at the brick and mortar call centers. This timekeeping system requires CSRs to scan their fingerprint to clock in and out. Plaintiffs and other similarly situated CSRs are instructed not to clock into the time clock more than five (5) minutes before the start of their scheduled shift. They are likewise instructed not to clock out of the time clock more than five (5) minutes after the end of their scheduled shift.

34.     During training, Defendant's maintain an unlawful rounding policy which rounds employee clock-in times to the start of the scheduled shift if they clock in within five (5) minutes of their start of shift time and employee clock-out times to the end of the scheduled shift if they clock out within five (5) minutes of their end of shift time. Defendant's rounding policy is unlawful when examined along with its attendance and adherence policies, which require CSRs to be ready to commence training, with all programs and applications open, at the start of their scheduled shift, and prohibit CSRs from clocking in or out more than five (5) minutes before or past their scheduled shift. The policy is unlawful because Defendant's CSRs are always deprived of the opportunity to benefit from rounding without being subject to discipline.

35.     During training, the only way for CSRs to gain time on Defendant's lunch rounding policy is for the CSR to return from lunch late, in which case they are in violation of Defendant's attendance and adherence policies. Therefore, Defendant also implements an unlawful lunch rounding policy during training and when the CSRs use the time clock.

36.     In each workweek the CSRs work forty (40) hours or more during training, the rounding policy results in an unlawful deprivation of overtime wages, as provided by the FLSA.

In each training workweek the CSR work less than forty (40) hours (an exception to their baseline forty (40) hour schedule) the rounding policy results in an unlawful deprivation of straight time wages.

37.    All of Defendant's CSRs use the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.  These programs and applications are an integral and important part of the CSRs' work and they cannot perform their jobs without them.

38.    Once training is completed and in order to perform their job, Plaintiffs and all other CSRs are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However, Plaintiffs and all other CSRs are not actually "clocked in" for their shifts until *after* the computer boot-up and login process is complete or nearly complete.

39.    The pre-shift off-the-clock time Plaintiffs and all other CSRs spend booting up and logging in to their computers directly benefits Defendant and is integral and indispensable to the CSRs' job responsibilities.

40.    Plaintiffs and other similarly situated CSRs are also trained or instructed to clock-out *before* closing all work applications and systems to make certain they are clocked-out the moment they are done fielding calls.

41.    Defendant's CSRs also perform off-the-clock work when returning from lunch, for example undergoing some or all of the computer boot up process mentioned above, and when they experience technical difficulties.

42.    Despite knowing Plaintiffs and all other CSRs perform this pre-, mid- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead

suffered and permitted it to happen.

43.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other CSRs boot up and log into their computers each day, along with the time they log into their telephone systems.

44.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other CSRs experience down time due to technical issues.

45.    Because Defendant requires its CSRs to perform pre-, mid- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spend working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

46.    Despite its ability to track the amount of time Plaintiffs and other CSRs spend in connection with the pre- and mid-shift boot-up and login process, post-shift shutdown process, and technical downtime, Defendant failed to pay Plaintiffs and other CSRs for the off-the-clock work they performed each shift, thus breaching its contracts with its CSRs.

**A.  Pre-Shift Off-the-Clock Work**

47.    Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to perform daily off-the-clock tasks such as turn on or warm-up their computer; wait for the computer to turn on; log into Microsoft Windows using their username and password; and then start up and log into various secure computer networks and software programs/applications, such as Avaya and Citrix, in order to access information.

48.    The above tasks take substantial time on a daily basis with said time ranging from five (5) to twenty (20) minutes per day, and even longer on days when Defendant's computer

networks and programs are not working properly.

49.    Defendant's CSRs complete this process before each shift and before they can begin training/field phone calls; however, they are not actually "clocked in" for their shifts until *after* the computer boot-up and login process is complete or nearly complete.

50.    As a result, CSRs, including Plaintiffs, spend between five (5) and twenty (20) minutes or more at the beginning of each shift performing off-the-clock (uncompensated) work for Defendant.

51.    The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other CSRs is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### B.  Mid-Shift Off-the-Clock Work

52.    Defendant promises its CSRs one unpaid 30-minute meal period each eight (8) hour shift (the bare minimum required by federal law).

53.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

54.    Instead of complying with the law, Defendant does not provide CSRs with bona fide meal periods because it requires the CSRs to resume taking live calls promptly at the end of

their scheduled meal breaks, meaning that the CSRs must return to their computer stations prior to the end of their unpaid meal breaks to log back in and reconnect to computer programs.

55.    Some of the programs have auto-log out features, which automatically log the CSRs out because they are idle for too long while at lunch.

56.    Only after Defendant's CSRs reboot the programs that they are automatically logged out of are the CSRs allowed to clock in to Defendant's timekeeping system, Asure Force/NexTime.

57.    The work performed by Defendant's CSRs during their unpaid meal breaks takes anywhere from one (1) to five (5) minutes per shift, but CSRs are not paid for this time.

58.    The unpaid off-the-clock work Plaintiffs and other CSRs perform during their lunch breaks and prior to clocking back in to Defendant's timekeeping system is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**C.  Post-Shift Off-the-Clock Work**

59.    Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls.

60.    The post-shift off-the-clock work generally takes at least one (1) minute per day, but Defendant's CSRs are not paid for this time.

61.    The post-shift off-the-clock work Plaintiffs and other CSRs perform is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D.  Technical Down Time

62.     Additionally, in the course of performing their jobs, Plaintiffs and other CSRs regularly experience technical problems with their computer systems, which log them out of the time keeping systems and cause them to redo some or all of the boot up process.

63.     In these situations, the CSRs can spend up to one (1) hour or longer working with Defendant's technical team to resolve the problem(s).

64.     Defendant is aware of the time CSRs spend experiencing technical difficulties and working with Defendant's technical team to resolve these difficulties, and Defendant can pay CSRs for this time, but does not.

### E.  Exemplary Work Weeks and Estimated Wages Owed

65.     The FLSA and regular wage violations discussed herein occurred throughout Plaintiffs' employment with Defendant. However, for purposes of illustration, Plaintiffs offer the following exemplary workweeks.

66.     An example of specific workweeks in which Defendant failed to pay Plaintiff Harris all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Plaintiff Makayla Harris**
**11/29/20 – 12/12/20 Pay Period**

• Plaintiff worked more than 40 hours each workweek at a rate of $10.76 per hour and upon information and belief was paid $16.14 per hour in overtime.

• Having performed the above-described off-the-clock work, Plaintiff should have been paid an additional 6 to 25 minutes or more at her overtime rate of $ 16.14 for each hour.

**Exhibit D**, Harris Exemplary Time Card

67.      An example of specific workweeks in which Defendant failed to pay Plaintiff

Harris all regular wages due for hours worked below 40 hours (in support of Plaintiffs' breach of

contract and unjust enrichment claims) includes the following:

**12/13/20 – 12/26/20 Pay Period**

• Plaintiff worked less than 40 each workweek hours at a rate of $10.76 per hour.

• Having performed the above-described off-the-clock work, Plaintiff should have been paid an additional 6 to 25 minutes or more at her regular rate of $10.76 for each hour.

**Exhibit E**, Harris Exemplary Time Card

### F.  The Off-the-Clock Work Results in Viable "Gap Time" Claims

68.     "Gap time" claims are those "in which an employee has not worked 40 hours in a

given week but seeks recovery of unpaid time worked, or in which an employee has worked over

40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana

at Home, Inc*., 450 F.Supp.3d 162, 182 (D.Conn. Mar. 31, 2020); *Conner v. Cleveland Cty.*, *N.C.*,

22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under

the FLSA).

69.     Plaintiffs, and similarly situated CSRs, regularly worked non-overtime hours (i.e.

"gap time") for which they were not paid.

70.     During the weeks that CSRs do not work over forty (40) hours in a workweek, the

outcome of Defendant's policies and practices is a deprivation of straight time wages, in breach of

Defendant's contracts with its CSRs.

### G.  Defendant Benefitted from the CSRs' Off-the-Clock Work

71.     At all relevant times, Defendant has required and directly benefitted from the off-

the-clock work performed by Plaintiffs and all other CSRs in connection with the pre-, mid- and

post-shift activities described above.

72.    At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other CSRs.

73.    At all relevant times, Defendant has been able to track the amount of time Plaintiffs and all other CSRs spend in connection with the pre-, mid- and post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiffs and all other CSRs for the off-the-clock work they performed.

74.    At all relevant times, Plaintiffs and all other CSRs have been non-exempt hourly employees, subject to the requirements of the FLSA and related state laws.

75.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the CSRs in order to pressure them into performing pre-, mid- and post-shift work off-the-clock.

76.    Defendant expressly trained and instructed Plaintiffs and all other CSRs to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

77.    Defendant instructs CSRs to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of five (5) to twenty (20) minutes per day, but Defendant prohibits CSRs from clocking into the timekeeping software during training more than five (5) minutes before the start of the scheduled shift and more than two (2) minutes before the start of their scheduled shift after training while simultaneously requiring the CSRs to be phone/training ready the moment their shifts begin.

78.    Similarly, at the end of the shift, Defendant instructs CSRs to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls. Defendant likewise instructs CSRs during training not to clock out more than

five (5) minutes after the conclusion of their shift.

79.    Defendant similarly instructs its CSRs to have all work applications and systems fully loaded the moment their lunch breaks conclude so they can be prepared to field calls.

80.    At all relevant times, Defendant's policies and practices deprived Plaintiffs and the CSRs of wages owed for the pre-, mid- and post-shift activities they performed.

81.    During the weeks that CSRs work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

82.    Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiffs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

83.    Defendant has known or should have known that the time spent by Plaintiffs and other CSRs in connection with the pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it has acted in good faith.

84.    Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

85.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

86.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

87.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

88.    Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

89.    All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

90.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

    b.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work, such as tech time; the pre- and mid-shift boot up process; and the time spent post-shift closing all applications, networks and programs and shutting down their computers; and

    c.    Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the

17

benefit of Defendant.

91.     Defendant is aware, or should have been aware, that federal law requires it to pay Plaintiffs and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

92.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

93.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

94.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre, mid- and post-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

95.     There are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

96.     Plaintiffs estimate the FLSA Collective, including both current and former CSRs over the relevant period, includes thousands of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

97.    All of the estimations discussed herein will be refined after class discovery is completed.

## RULE 23 STATE LAW CLASS ACTION ALLEGATIONS

98.    Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of the following putative Classes (herein collectively referred to as the "Rule 23 State Law Classes"):

**The Arkansas Class is defined as follows:**

> *All current and former hourly CSRs who worked for Defendant at any location in Arkansas during the applicable statutory period.*

**The Ohio Class is defined as follows:**

> *All current and former hourly CSRs who worked for Defendant at any location in Ohio during the applicable statutory period.*

**The Virginia Class is defined as follows:**

> *All current and former hourly CSRs who worked for Defendant at any location in Virginia during the applicable statutory period.*

Plaintiffs reserve the right to amend this definition if necessary.

99.    The members of the Rule 23 State Law Classes are so numerous that joinder of all members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 State Law Class members in each state.  Rule 23 State Law Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

100.    There is a well-defined community of interests among Rule 23 State Law Class members and common questions of law and fact predominate in this action over any questions affecting individual members. These common legal and factual questions, include, but are not limited to, the following:

a.   Whether the pre-shift time Rule 23 State Law Class members spend on startup and login activities each session before "clocking in" for each shift is compensable;

b.   Whether the time that Rule 23 State Law Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable;

c.   Whether the post-shift time Rule 23 State Law Class members spend closing all programs, applications and networks after "clocking out" is compensable;

d.   Whether the technical down time Rule 23 State Law Class members spend troubleshooting is compensable;

e.   Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 State Law Class member regular wages or minimum wage for each non-overtime hour worked;

f.   Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 State Law Class member overtime compensation for each overtime hour worked; and

g.   Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 State Law Classes;

101.    Plaintiffs' claims are typical of those of the Rule 23 State Law Class members in that they and all other Rule 23 State Law Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 State Law Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 State Law Class members.

102.    Plaintiffs will fully and adequately protect the interests of the Rule 23 State Law Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 State Law Class members.

103.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 State Law Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

104.    This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

105.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

106.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 State Law Classes and declaratory relief is appropriate in this case with respect to the Rule 23 State Law Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

107.    Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition if necessary.

108.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all
Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably
estimate there are hundreds, if not thousands, of Rule 23 Nationwide Class members.  Rule 23
Nationwide Class members should be easy to identify from Defendant's computer systems and
electronic payroll and personnel records.

109.    There is a well-defined community of interests among Rule 23 Nationwide Class
members and common questions of law and fact predominate in this action over any questions
affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual
questions, include, but are not limited to, the following:

    a.   Whether the pre-shift time Rule 23 Nationwide Class members spend on
    startup and login activities each session is compensable;

    b.   Whether the mid-shift time Rule 23 Nationwide Class members spend
    rebooting Defendant's programs, applications and networks during their unpaid
    lunch breaks before they return from their breaks is compensable;

    c.   Whether the post-shift time Rule 23 Nationwide Class members spend
    closing all programs, applications and networks is compensable;

    d.   Whether the technical down time Rule 23 Nationwide Class members spend
    troubleshooting is compensable;

    e.   Whether Defendant's non-payment of wages for all compensable time
    amounted to a breach of contract; and

    f.   Whether Defendant's non-payment of wages for all compensable time
    resulted in an unjust enrichment to Defendant.

110.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they
and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result
of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise
from the same pay policies, practices, promises and course of conduct as all other Rule 23
Nationwide Class members' claims and their legal theories are based on the same legal theories as

all other Rule 23 Nationwide Class members.

111.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

112.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

113.     This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

114.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

115.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

116.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

117.    At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

118.    At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

119.    At all times relevant to this action, Plaintiffs were an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

120.    Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

121.    Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

122.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

123.    At all times relevant to this action, Defendant required Plaintiffs and the proposed FLSA Collective members to perform no less than seven (7) minutes and as much as twenty-six (26) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

124.    The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these

activities is not *de minimis*.

125.    Defendant has maintained during training an unlawful time-rounding policy that did not comply with 29 C.F.R. § 785.48(b) because the policy did not "average out so that the employees [we]re fully compensated for all the time they actually work," and instead "result[ed], over a period of time, in a failure to compensate the employees properly for all the time they have actually worked." *Id*.

126.    As a result of Defendant's unlawful time-rounding policy, in workweeks that the Plaintiffs and other CSRs worked more than forty (40) hours, they were deprived of overtime wages in violation of the FLSA.

127.    Similarly, in weeks the Plaintiffs and other Class members worked more than forty (40) hours, and Defendant unlawfully rounded down their time when they clocked in and began working more than five (5) minutes before the start of their shift, Defendant's actions amounted to a violation of the FLSA.

128.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

129.    Defendant's violations of the FLSA have been knowing and willful. Defendant has known or could have determined how long it takes its CSRs to perform their pre-, mid- and post-shift off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for these work activities, but did not.

130.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act,

an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 ARKANSAS CLASS ACTION**
**VIOLATIONS OF THE ARKANSAS MINIMUM WAGE ACT, ARK. CODE ANN.**
**§§ 11-4-201, *et seq.*, ARK. CODE R. § 10-14.108 ("ARKANSAS WAGE ACT")**

131.    Plaintiff Tiffany Williams re-alleges and incorporates all previous paragraphs herein.

132.    The Minimum Wage Act of the State of Arkansas provides that employees are entitled to minimum wage, A.C.A. § 11-4-210, and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). A.C.A. § 11-4-211.

133.    A.C.A. § 11-4-218 allows an employee who has not been paid in accordance with the Minimum Wage Act of the State of Arkansas to bring a civil action to recover all unpaid amounts, plus liquidated damages, costs, and reasonable attorneys' fees.

134.    At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Arkansas Minimum Wage Act, §§ 11-4-201*et seq.*, and Ark. Code. R. § 010.14-108 (collectively referred to as the "Arkansas Wage Act"), and Plaintiff and the Rule 23 Arkansas Class are employees entitled to the Arkansas Wage Act's protections. *See* Ark. Code Ann. § 11-4-203.

135.    The Arkansas Wage Act entitles employees to compensation for every hour worked in a workweek. *Id.*; Ark. Code R. § 010.14-108.

136.    Defendant violated the Arkansas Wage Act by regularly and repeatedly failing to compensate the Rule 23 Arkansas Class for the time spent on the work activities described in this Complaint.

137.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

138.    As a result, the Rule 23 Arkansas Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Arkansas Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, interest, and other appropriate relief under the Arkansas Wage Act at an amount to be proven at trial.

**COUNT III**
**RULE 23 OHIO CLASS ACTION**
**VIOLATIONS OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT**
**("OMFWSA"), O.R.C. §§ 4111, *et seq*. AND OHIO CONSTITUTION ART. II, § 34a**

139.    Plaintiff Colleen Lewin re-alleges and incorporates all previous paragraphs herein.

140.    The OMFWSA, provides that employees are entitled to minimum wage, O.R.C. § 4111.02, and "overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, O.R.C. § 4111.03. *See also* Ohio Const. art. II § 34a.

141.    Section 4111.14(A)(3) of the OMFWSA allows an employee who has not been paid minimum wage for all hours worked to bring a civil action to recover "[double] back wages, damages, and the employee's costs and reasonable attorney's fees." O.R.C. § 4111.14(A)(3); *see also* Ohio Const. art. II § 34a.

142.    At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the OMFWSA, O.R.C. § 4111, *et seq.*; *see also* Ohio Const. art. II § 34a.

143.    At all times relevant to the action, Plaintiff Lewin and the Rule 23 Ohio Class worked for Defendant in Ohio and are therefore covered by the OMFWSA.

144.    By failing to pay Plaintiff Lewin and members of the Rule 23 Ohio Class for all

27

hours worked up to forty (40) hours a week at their regular rate, Defendant violated the OMFWSA, O.R.C. § 4111.02 and Article II, § 34a of the Ohio Constitution. O.R.C. § 4111.02; Ohio Const. art. II, § 34a.

145.    Pursuant to O.R.C. § 4111.10(A), an employer who fails to pay its employees for all overtime wages outlined in O.R.C. § 4111.03 "is liable to the employee affected for the full amount of the overtime wage rate, less any amount actually paid to the employee by the employer, and for costs and reasonable attorney's fees." O.R.C. § 4111.10(A)

146.    By failing to pay Plaintiff Lewin and members of the Rule 23 Ohio Class for all hours worked in excess of forty (40) hours a week at one and one-half times their regular rates, Defendant violated the OMFWSA, O.R.C. § 4111.03(A). *See*, *e.g.*, O.R.C. § 4111.03(A).

147.    Additionally, § 4111.08 of the OMFWSA requires employers to maintain and preserve payroll records, including "the amount paid each pay period to each employee, the hours worked each day and each work week by the employee." O.R.C. § 4111.08.

148.    Defendant violated the OMFWSA by failing to properly maintain accurate records of all hours Plaintiff Lewin and the members of the Rule 23 Ohio Class worked each workday and within each workweek.

149.    Defendant violated the OMFWSA and Article II, §34a of the Ohio Constitution by regularly and repeatedly failing to compensate the Rule 23 Ohio Class for the time spent on the work activities described in this Complaint.

150.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

151.    As a result, the Rule 23 Ohio Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Ohio Class is entitled to recover unpaid wages owed,

plus costs and attorneys' fees, interest, and other appropriate relief under the OMFWSA at an amount to be proven at trial.

## COUNT IV
### RULE 23 VIRGINIA CLASS ACTION
### VIOLATIONS OF THE VIRGINIA MINIMUM WAGE ACT and
### THE VIRGINIA OVERTIME WAGE ACT,
### VA. CODE ANN. §§ 40.1-28, *et seq.* and 40.1-29.2, *et seq.*

152.    Plaintiff Makayla Harris re-alleges and incorporates all previous paragraphs herein.

153.    The Virginia Minimum Wage Act provides for the minimum rates at which employees must be paid, Va. Code Ann. § 40.1-28.10(A)-(G), and the Virginia Overtime Wage Act provides that employees are entitled to overtime compensation calculated "at a rate not less than one and one-half times the employee's regular rate." Va. Code Ann. § 40.1-29.2(B).

154.    Employees who have not been paid in accordance with the Virginia Minimum Wage Act are entitled to recover all unpaid wages, interest at eight (8) percent per annum from the date(s) the wages were due, and attorneys' fees. Va. Code Ann. § 40.1-28.12.

155.    Va. Code Ann. § 40.1-29.2(G) allows an employee who has not been paid in accordance with the Virginia Overtime Wage Act to bring a civil action to recover all unpaid amounts, liquidated damages, prejudgment interest "at an annual rate of eight percent accruing from the date the wages were due[,]" and attorneys' fees and costs." §§ 40.1-29.2(F), 40.1-29(G),(J). If an employer is found to have knowingly failed to pay overtime wages due to an employee, the Virginia Overtime Wage Act additionally entitles employees to "an amount equal to triple the amount of wages due and reasonable attorney fees and costs." § 40.1-29(J).

156.    At all times relevant to the action, Defendant was an employer covered by the wage and overtime mandates of the Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28.9, and the Virginia Overtime Wage Act, Va. Code Ann. § 40.1-29.2.

157.    At all times relevant to the action, Plaintiff Harris and the Rule 23 Virginia Class worked for Defendant in Virginia and are therefore covered by the protections of Virginia's Wage Acts.

158.    Defendant violated the Virginia Minimum Wage Act and the Virginia Overtime Wage Act by regularly and repeatedly failing to compensate the Rule 23 Virginia Class for the time spent on the work activities described in this Complaint.

159.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

160.    As a result, the Rule 23 Virginia Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Virginia Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, interest, and other appropriate relief under the Virginia Wage Acts at an amount to be proven at trial.

**COUNT V**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

161.    Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

162.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

163.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

164.    For example, Defendant offered to compensate Plaintiff Lewin at a minimum of

$10.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff Lewin accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

165.    Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

166.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $10.00 per hour within the applicable period.

167.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid- and post-shift work and technical downtime described herein.

168.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

169.    Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

170.    Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated

minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time"

claims).

171.    Defendant also breached their duty of good faith and fair dealing by failing to keep

track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock

activities, which is a fundamental part of an "employer's job."

172.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and

the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT VI**
**RULE 23 NATION WIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

173.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

174.    This Count is pled in the alternative to Count V, *supra*, pursuant to Fed. R. Civ. P.

8(d)(2)-(3).

175.    At all times relevant to this action, Defendant promised Plaintiffs and every other

Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the

work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of

Defendant.

176.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon

Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs

and carrying out their required work duties.

177.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the

agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was

unjustly enriched.

178.    Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work

tasks at the request of and without objection by Defendant.

179.    Defendant received and accepted the above-referenced off-the-clock work services

from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived

therefrom.

180.    Upon information and belief, Defendant used the monies owed to Plaintiffs and

every other Rule 23 Nationwide Class member to finance its various business ventures or pay its

equity owners.

181.    Defendant has been unjustly enriched by the retention of monies received pursuant

to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit,

without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

182.    Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's

failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the

Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources

in a profitable manner.

183.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other

Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

WHEREFORE, Plaintiffs request the following relief:

a.      An Order conditionally certifying this case as a collective action in accordance with
        29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.      An Order certifying this action as a class action (for the Rule 23 Arkansas Class)
        pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Williams' Arkansas
        state law claims (Count II);

c.      An Order certifying this action as a class action (for the Rule 23 Ohio Class)
        pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Lewin's Ohio state
        law claims (Count III);

d.      An Order certifying this action as a class action (for the Rule 23 Virginia Class)
pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Harris' Virginia
state law claims (Count IV);

e.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class)
pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract
claim (Count V);

f.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class)
pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment
claim (Count VI);

g.      An Order compelling Defendant to disclose in computer format, or in print if no
computer readable format is available, the names and addresses of all proposed
FLSA Collective members and Rule 23 Nationwide Class members, and
authorizing Plaintiffs to send notice of this action to all those similarly situated
individuals, including the publishing of notice in a manner that is reasonably
calculated to apprise the class members of their rights by law to join and participate
in this lawsuit;

h.      An Order designating Plaintiff Williams as the representative of the Rule 23
Arkansas Class, and undersigned counsel as Class counsel for the same;

i.      An Order designating Plaintiff Lewin as the representative of the Rule 23 Ohio
Class, and undersigned counsel as Class counsel for the same;

j.      An Order designating Plaintiff Harris as the representative of the Rule 23 Virginia
Class, and undersigned counsel as Class counsel for the same;

k.      An Order designating Plaintiffs as representatives of the FLSA Collective and the
Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

l.      An Order declaring Defendant violated the FLSA and the Department of Labor's
attendant regulations as cited herein;

m.      An Order declaring Defendant's violations of the FLSA were willful;

n.      An Order declaring Defendant breached its contracts with Plaintiffs and the
members of the Rule 23 Nationwide Class by failing to pay them for each hour they
worked at a pre-established (contractual) regularly hourly rate;

o.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it
required Plaintiffs and the members of the Rule 23 Nationwide Class to perform;

p.      An Order granting judgment in favor of Plaintiffs and against Defendant and
awarding Plaintiffs, the FLSA Collective and the Rule 23 Nationwide Class the full
amount of damages and liquidated damages available by law;

q.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

r.    An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

s.    An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: February 18, 2022                    Respectfully Submitted,

*/s/ Kevin Stoops*
Kevin Stoops
Charles R. Ash, IV (*admission forthcoming*)
Alana Karbal
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
crash@sommerspc.com
akarbal@sommerspc.com

*Counsel for Plaintiffs, the FLSA Collective and the putative Class*