# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**MAKAYLA HARRIS, COLLEEN LEWIN, TIFFANY WILLIAMS, DANIELLE COLWILL MAUCH, KRISTOPHER FLAGG, MATTHEW BERG, ALICIA JENKINS, ANISSA BATES, BRITTANY YOUNG, KIMBERLY PITNEY, DAWN BADGER, PAULA KEMP, RHONDA DAVIS, TIFFANY PATTERSON, BRITTNEY CHRISTIAN, PHANTHASIA KING, TAURI SCHULER-BONNER, AMELIA KURTZ, MATTHEW PAVEY, RACHEL DUBOSE, LEXUS RANSOM, CLAUDINE MIUDO, RICHARD DEAN, STEPHANIE ST. GEORGE** and **SASHA RANSEY** individually, and on behalf of others similarly situated,

    Plaintiffs,

vs.

**STARTEK USA, INC.,** a corporation,

    Defendant.

Case No.: 1:22-cv-00437-RM-JPO

Hon.: Raymond P. Moore

Mag.: James P. O'Hara

---

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL, AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiffs Makayla Harris, Colleen Lewin, Tiffany Williams, Danielle Colwill Mauch, Kristopher Flagg, Matthew Berg, Alicia Jenkins, Anissa Bates, Brittany Young, Kimberly Pitney, Sasha Ransey, Dawn Badger, Paula Kemp, Rhonda Davis, Tiffany Patterson, Brittney Christian, Phanthasia King, Tauri Schuler-Bonner, Amelia Kurtz, Matthew Pavey, Rachel Dubose, Lexus Ransom, Claudine Miudo, Richard Dean, Stephanie St. George, and Sasha Ransey ("Plaintiffs"), state as follows for their Motion for Preliminary Approval of Settlement, Appointment of Class Representatives and Class Counsel, and Certification of Settlement Class:

1

1.      This case was initiated on February 18, 2022, asserting the following claims:

Count I:        Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* – Failure to Pay Overtime (Collective Action)

Count II:       Violations of the Arkansas Minimum Wage Act, Ark. Code Ann. §§ 11-4-201, *et seq.*, Ark. Code R. § 10-14.108 (Rule 23 Arkansas Class Action)

Count III:      Violations of the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq.* and Ohio Constitution Art. II, § 34a (Rule 23 Ohio Class Action)

Count IV:       Violations of the Virginia Minimum Wage Act and the Virginia Overtime Wage Act, Va. Code Ann. §§ 40.1-28, *et seq.* and 40.1-29.2, *et seq.*    (Rule 23 Virginia Class Action)

Count V:        Nationwide Breach of Contract (Rule 23 Class Action)

Count VI:       Nationwide Unjust Enrichment (Rule 23 Class Action)

[ECF No. 1].

2.      On March 18, 2022, Defendant filed its Answer, which denied all of Plaintiff's allegations. Further, Defendant asserted 13 affirmative and other defenses, including, among others: 1) that Plaintiffs and the putative class members were paid for all work performed; 2) that Plaintiffs and the putative class members are not entitled to liquidated damages or an extended (third year) statute of limitations because Defendant's actions were not willful and it acted in good faith; and 3) that the alleged off-the-clock work was not compensable under the *de minimis* doctrine. [ECF No. 12].

3.      On April 11, 2022, Plaintiffs filed their Pre-Discovery Motion for Conditional Collective Certification, asking the Court to conditionally certify a collective of customer service representatives. [ECF No. 16]. On May 23, 2022, Defendant responded to Plaintiffs' Motion [ECF No. 34] and on June 6, 2022, the briefing on Plaintiffs' Motion concluded with Plaintiffs' Reply. [ECF No. 35].

4.      On March 31, 2023, then-Magistrate Judge Crews issued his Report and Recommendation that Plaintiffs' Motion for Conditional Certification be granted in part and denied in part, with the following collective being conditionally certified for purposes of Plaintiffs' FLSA claim(s): All current and former hourly customer service representatives (CSRs) who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment. [ECF No. 49].

5.      On April 14, 2023, Defendant filed its Objections to the Magistrate Judge's Recommendation, and on April 26, 2023 [ECF No. 50], Plaintiffs filed their Response to Defendant's Objections. [ECF No. 51].

6.      On February 21, 2024, this Court, *inter alia*: (1) rejected in part and sustained in part Defendant's Objections; (2) adopted in part and rejected in part Magistrate Judge Crews' Report and Recommendation; (3) granted Plaintiffs' Motion for Conditional Certification; (4) conditionally certified this action as a collective action pursuant to 29 U.S.C. § 216(b); and (5) ordered Defendant to provide Plaintiffs' counsel the names, physical addresses, email addresses, and telephone numbers for all putative members of the FLSA collective in an electronically readable and importable format. The Court defined the collective action members as follows: "All current and former hourly call center workers, including but not limited to: Customer Service Representatives, Engagement Specialists, and Technical Support Representatives (collectively, "Customer Service Representatives") who work or have worked for Startek USA, Inc. at any time from February 20, 2021 to the present." (*Id*.). [ECF No. 54].

7.      On February 23, 2024, Plaintiffs filed a Motion for Equitable Tolling and the briefing on Plaintiffs' Motion concluded with the filing of Defendant's Sur-Reply on April 5, 2024. [ECF No. 55].

8.      On April 10, 2024, the Court granted Plaintiffs' Motion for Equitable Tolling and redefined the collective action members as follows: All current and former hourly call center workers, including but not limited to: Customer Service Representatives, Engagement Specialists, and Technical Support Representatives (collectively, "Customer Service Representatives") who work or have worked for Startek USA, Inc. at any time from June 8, 2019 to the present. [ECF No. 70].

9.      On July 25, 2024, the Parties filed a Joint Motion to Stay Case and Toll the Statute of Limitations for Rule 23 Class Members. The purpose of the Motion was to stay all case deadlines to allow the Parties to prepare for and participate in mediation and to toll the limitations period for the claims of all would-be Rule 23 class members of Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Pennsylvania, South Carolina, and West Virginia. [ECF No. 94].

10.      On August 24, 2024, the opt-in period closed. In total, there are 4,384 FLSA opt-ins.

11.      Over the next few months, the Parties conducted numerous meet and confer conferences regarding the viability of Plaintiff's claims and the possibility of exploring resolution prior to issuance of conditional notice.

12.      Ultimately, the Parties agreed to attend mediation and exchange voluntary discovery including class-wide pay and time records to assist with that mediation.

13.      On January 16, 2025, the Parties attended a private mediation with well-respected wage and hour mediator Michael Russell of Nashville, Tennessee.

14.      After a full day mediation, the Parties were not able to reach an agreement.

15.     On January 27, 2025, Plaintiffs filed their First Amended Complaint adding claims arising under the wage and hour laws of the states of: Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Pennsylvania, South Carolina and West Virginia. [ECF No. 105].

16.     Over the next few weeks, the Parties held numerous meet and confer conferences to discuss the scope of representative discovery and to prepare an amended scheduling order.

17.     From February through June 2025 the Parties engaged in negotiations – direct and with the assistance of Mediator Russell. The Parties negotiations consisted of dozens of emails, telephone calls and meetings.

18.     The Parties ultimately reached a settlement in principle on June 10, 2025.

19.     For the reasons set forth in this Motion, Plaintiffs request entry of an order: (1) preliminarily certifying a class for settlement purposes only under Rule 23 of the Federal Rules of Civil Procedure and conditionally certifying a FLSA collective for settlement purposes only under 29 U.S.C. §201., *et seq.* (as defined in the Parties' Joint Stipulation of Class Action Settlement (hereinafter "Settlement Agreement")); (2) preliminarily approving the Parties' Settlement Agreement and all terms therein; (3) preliminarily appointing Plaintiffs as Class Representatives for the Class Members and Sommers Schwartz, P.C. as Class Counsel; (4) approving the form, content, and dissemination of the Parties' proposed Notice of Settlement; (5) approving the appointment of the Settlement Administrator; and (6) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, litigation expenses, and service awards.

20.     Plaintiffs respectfully submit that good cause exists for granting the Motion for the reasons set forth in the concurrently filed documents. Defendant's counsel does not oppose the Motion.

21.     The basis for this Motion is that the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Class Members as a whole, and the procedures set forth in the Settlement Agreement are adequate to ensure the opportunity of Class Members to participate in, opt out of, or object to the Settlement.

22.     This Motion is based upon this Motion, the Memorandum of Points and Authorities and other documents filed herewith, including the Settlement Agreement, the Declaration of Class Counsel (with exhibits), the Proposed Order granting preliminary approval as addressed above, the other pleadings and records on file in this action, and the presentations of counsel and such oral or documentary evidence as may be presented at the hearing on this unopposed Motion.

Date: July 15, 2025                              Respectfully Submitted,

                                        */s/ Kevin J. Stoops*
                                        Kevin J. Stoops
                                        Alana Karbal
                                        SOMMERS SCHWARTZ, P.C.
                                        One Towne Square, 17th Floor
                                        Southfield, Michigan 48076
                                        Tel: (248) 355-0300
                                        kstoops@sommerspc.com
                                        akarbal@sommerspc.com

                                        *Attorneys for the Plaintiffs and the Putative
                                        Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will automatically send notice of such filings to all counsel of record.

                    */s/ Kevin J. Stoops*
                    Kevin J. Stoops

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**MAKAYLA HARRIS, COLLEEN LEWIN,
TIFFANY WILLIAMS, DANIELLE
COLWILL MAUCH, KRISTOPHER
FLAGG, MATTHEW BERG, ALICIA
JENKINS, ANISSA BATES, BRITTANY
YOUNG, KIMBERLY PITNEY, DAWN
BADGER, PAULA KEMP, RHONDA
DAVIS, TIFFANY PATTERSON,
BRITTNEY CHRISTIAN, PHANTHASIA
KING, TAURI SCHULER-BONNER,
AMELIA KURTZ, MATTHEW PAVEY,
RACHEL DUBOSE, LEXUS RANSOM,
CLAUDINE MIUDO, RICHARD DEAN,
STEPHANIE ST. GEORGE** and **SASHA
RANSEY** individually, and on behalf of others
similarly situated,

Case No.: 1:22-cv-00437-RM-JPO

Hon.: Raymond P. Moore

Mag.: James P. O'Hara

        Plaintiffs,

vs.

**STARTEK USA, INC.,** a corporation,

        Defendant.

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
## SETTLEMENT, APPOINTMENT OF CLASS REPRESENTATIVES AND
## <u>CLASS COUNSEL, AND CERTIFICATION OF SETTLEMENT CLASS</u>

## TABLE OF CONTENTS

I.    **INTRODUCTION** ...........................................................................................1

II.   **PROCEDURAL HISTORY OF THE CASE** .......................................2

    A.    THE PROCEEDINGS, PLEADINGS, AND PARTIES ....................2

    B.    SUMMARY OF DISCOVERY CONDUCTED PRIOR TO
        SETTLEMENT ...................................................................................6

    C.    DEFENDANT'S ESTIMATED EXPOSURE ....................................8

    D.    THE SETTLEMENT AGREEMENT .............................................10

        1.   The Class Members ...................................................................10

        2.   The Monetary Payments ...........................................................11

        3.   The Release ...............................................................................12

        4.   Notice, Request for Exclusion, Objection Periods ...................13

III.   **LEGAL ANALYSIS** .........................................................................14

    A.    PRELIMINARY  APPROVAL  OF  THE  SETTLEMENT  IS
        APPROPRIATE ................................................................................14

        1.   The Proposed Settlement was Fairly and Honestly Negotiated ...................16

        2.   Serious Questions of Law and Fact Exists, Placing the Ultimate
            Outcome of this Action in Doubt ..............................................17

        3.   The Value of Immediate Recovery Outweighs the Possibility of any
            Future Relief .............................................................................19

        4.   Counsel Believe the Settlement is Fair and Reasonable ...........21

        5.   The Settlement Class Satisfies the Requirement for Rule 23(a) and
            (b)(3) for Purposes of Final Certification ..................................22

            i.   Rule 23(a)(1)'s numerosity requirement is satisfied .............23

            ii.   Rule 23(a)(2)'s commonality requirement is satisfied .........23

            iii.   Rule 23(a)(3)'s typicality requirement is satisfied ...............24

i

iv.  Rule 23(a)(4)' adequacy requirement is satisfied ..................................24

v.  Rule 23(b)(3) is satisfied .......................................................................25

6.  The Standard for FLSA Settlement Approval ...............................................27

B.  THE PROPOSED NOTICE AND NOTICE PLAN IS PROPER AND
SHOULD BE APPROVED BY THE COURT .......................................................28

C.  THE REQUESTED SERVICE AWARDS TO NAMED PLAINTIFFS,
AND ATTORNEYS' FEES AND LITIGATION EXPENSES TO CLASS
COUNSEL, ARE PROPER AND SHOULD BE APPROVED BY THE
COURT ...............................................................................................................30

1.  Service Awards to the Named Plaintiffs...............................................30

2.  Attorneys' Fees .....................................................................................31

3.  Litigation Expenses...............................................................................33

D.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.....................34

IV.  **CONCLUSION** ............................................................................................35

# TABLES OF AUTHORITIES

## Cases

*Adamson v. Bowen*,
  855 F.2d 668 (10th Cir.1988) ................................................ 24

*Alvarado Partners, L.P. v. Mehta*,
  723 F. Supp. 540 (D. Colo. 1989) ..................................... 17, 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................... 26

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ............................................ 14

*Ashley v. Reg'l Transp. Dist.*,
  2008 WL 384579 (D. Colo. Feb. 11, 2008)................................. 17

*A-W Land Co., LLC v. Anadarko E&P Co. LP*,
  No. 09-cv-22293-MSK-MJW, 2012 U.S. Dist. LEXIS 139241 (D. Colo. Sept. 26,2012) ....... 23

*Bass v. PJCOMN Acquisition Corp.*,
  No 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352 (D. Colo. June 1, 2011)............. 23

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988)......................................... 32

*Blum v. Stenson*,
  465 U.S. 886 (1984) ....................................................... 31

*Bredbenner v. Liberty Travel, Inc.*,
  2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011)...................... 31

*Bryant v. Act Fast Delivery of Colo., Inc.*,
  2015 WL 392663, at *5 (D. Colo. June 25, 2015) ........................ 29

*Case v. Plantation Title Co.*,
  2015 U.S. Dist. LEXIS 33580 (D.S.C. Mar. 5, 2015) ..................... 14

*Davis v. J.P. Morgan Chase  & Co.*,
  775 F. Supp. 2d 601 (W.D.N.Y. 2011)..................................... 15

*DeJulius v. New England  Health Care Emps. Pension Fund*,
  429 F.3d 935 (10th Cir. 2005) ....................................... 28, 29

*DG v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) .......................................... 23

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000).......................................... 26

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ....................................................... 33

*F & M Distribs., Inc.* Sec. Litig.,
  1999 U.S. Dist. LEXIS 11090, ........................................ 33, 34

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ......................................... 30

*Gottlieb v. Wiles*,
  11 F.3d 1004 (10th Cir. 1993) ........................................... 19

*Granada Inv., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ........................................... 22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................ 25, 27

*Hochschuler* v. *G.D. Searle & Co.*,
   82 F.R.D. 339 (N.D. Ill. 1978) ..................................................................... 26

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ................................................................ 33

*In re Continental Illinois Sec. Litig.*,
   962 F. 2d 566 (7th Cir. 1992) ...................................................................... 32

*In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM,
   2013 WL 4547404 (D. Colo. Aug. 28, 2013) ................................................ 15

*In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig*,
   55 F.3d 768 (3d Cir. 1995) .......................................................................... 22

*In re Integra Realty Res., Inc.*,
   262 F.3d 1089 (10th Cir. 2001) .................................................................... 28

*In re Integra Realty Res., Inc.*,
   354 F.3d 1246 (10th Cir. 2004) .................................................................... 16

*In re Janney Montgomery Scott LLC Fin. Consultant Litigation*,
   2009 WL 2137224 (E.D. Pa. Jul. 16, 2009) ................................................. 30

*In re Motor Fuel Temp. Sales Practices Litig.*,
   286 F.R.D. 488 (D. Kan. 2012) .................................................................... 15

*In re Qwest Savings and Investment Plan ERISA Litigation* No. 02-RB-464 (CBS)
   2004 U.S. Dist. LEXIS 24693, at *14-15 (D. Colo. Sept. 24, 2004) ............. 24

*In re Sugar Industry Antitrust Litig.*,
   73 F.R.D. 322 (E.D. Pa. 1976) .................................................................... 26

*In re Sunbeam*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) ....................................................... 32

*In re Telectronics Pacing Sys.*,
   172 F.R.D. 271 (S.D. Ohio 1997) ................................................................ 26

*In re Washington Power Supply System Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ....................................................................... 31

*IUE-CWA, v General Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich 2006) ................................................................ 18

*Latham v. Branch Banking & Trust Co.*,
   2014 U.S. Dist. LEXIS 16490 (M.D.N.C. Jan. 14, 2014) ............................. 27

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ........................................................ 15, 17, 21, 28

*Lucken Family L.P., LLLP v. Ultra Res., Inc.*,
   2010 WL 2650037 (D. Colo. June 30, 2010) ................................................ 28

*Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*,
   2010 WL 5387559 (D.Colo. Dec. 22, 2010) ................................................. 32

*Lynn's Food Stores, Inc. v. United States U.S. Dep't of Labor*,
   679 F.2d 1350 (11th Cir. 1982) ................................................................... 27

*Maez v Springs Automotive Group, LLC*,
   268 F.R.D. 391 (D.Colo 2010) .................................................................... 25

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................... 19

iv

*Milonas v. Williams*,
   691 F.2d 931 (10th Cir. 1982) ................................................................... 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................ 28

*Oppenlander v. Standard Oil Co. (Indiana)*,
   64 F.R.D. 597 (D. Colo. 1974) ................................................................. 20

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
   313 F.R.D. 117 (D. Colo. 2016) ................................................... 15, 20, 30

*re Wachovia Corp. ERISA Litig.*,
   2011 U.S. Dist. LEXIS 123109 (W.D.N.C. Oct. 24, 2011) ...................... 30

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992) ........................................................ 20

*Rhodes v. Olson Associates, P.C.*,
   308 F.R.D. 664 (D. Colo. 2015) ............................................................... 21

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ........................................................ 16, 25

*San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) ........................................................... 20

*Schwartz v. Celestial Seasonings*,
   178 F.R.D. 545 (D. Colo. 1998) ............................................................... 25

*Thompson v. Qwest Corporation*,
   2018 WL 2183988 (D. Col. May 11, 2018) ............................................. 31

*Tuten v. United Airlines, Inc.*,
   41 F. Supp. 3d 1003 (D. Colo. 2014) ................................................ 16, 18

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ................................................................................ 16

*Vaszlavik v. Storage Technology Corp.*,
   2000 WL 1268824 (D.Colo. Mar. 9, 2000) ............................................. 32

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................ 23

*Whittington v. Taco Bell of Am., Inc.*,
   2013 WL 6022972 (D. Colo. Nov. 13, 2013) .......................................... 31

*Wilkerson v. Martin Marietta Corp.*,
   171 F.R.D. 273 (D. Colo. 1997) ..................................................... 15, 17, 21

*Williams v. First Nat'l Bank of Pauls Valley*,
   216 U.S. 582 (1910) ................................................................................ 14

## Statutes

29 U.S.C. § 216(b) ..................................................................... 3, 10, 27

29 U.S.C. §§ 201 ............................................................ 1, 2, 13, 35

Ark. Code Ann. §§ 11-4-201 ......................................................... 2

O.R.C. §§ 4111 ............................................................................. 2

Ohio Constitution Art. II, § 34a ................................................... 2

Va. Code Ann. §§ 40.1-28 ............................................................ 2

## Rules

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 23

Fed. R. Civ. P. 23(e) .......................................................................................... 15, 28

Rule 23 of the Federal Rules of Civil Procedure ............................................... Passim

Rule 23(a)(2) ................................................................................................... 23, 24

Rule 23(a)(3) ......................................................................................................... 24

Rule 23(a)(4) ................................................................................................... 24, 25

Rule 23(b)(3) ................................................................................................... 25, 26

Rule 23(f) .............................................................................................................. 19

## **Other Authorities**

4 Newberg on Class Actions § 11:53 (4th ed. 2002) ............................................ 28

4 Newberg on Class Actions § 11.38, at 11-80 .................................................... 31

## I.    <u>INTRODUCTION</u>

This is a FLSA and state law wage-and-hour hybrid collective/class action. Plaintiffs settled this litigation on behalf of approximately 24,000 hourly Customer Service Representatives of Defendant Startek USA, Inc. (hereinafter "Defendant").

Without waiving any arguments regarding the merits of the claims, or the suitability of this case for class or collective treatment, Defendant has agreed to pay $2,500,000 (the Gross Settlement Fund) to resolve all claims asserted in Plaintiffs' First Amended Complaint on a class-wide basis. Plaintiffs, without opposition from Defendant, seeks court approval of the Parties' Joint Stipulation of Class Action Settlement Agreement (hereinafter "Settlement Agreement"). In support of this Motion, the Settlement Agreement is attached as Exhibit A and the declaration of proposed Class Counsel, Kevin Stoops, is attached as Exhibit B. A proposed order is attached as Exhibit C.

This is a common fund settlement, with no claims process. There will be no claim forms, and those class members who do not request exclusion from the Settlement will automatically receive settlement checks upon final approval of the Settlement Agreement.

For settlement purposes only, Plaintiffs request entry of an order: (1) preliminarily certifying a class for settlement purposes under the Rule 23 of the Federal Rules of Civil Procedure and conditionally certifying an FLSA collective for settlement purposes under 29 U.S.C. §§ 201., *et seq*.; (2) preliminarily approving the Parties' Settlement Agreement and all terms therein; (3) preliminarily appointing Plaintiffs as Class Representatives for the Class Members and Sommers Schwartz, P.C. as Class Counsel; (4) approving the form of the Parties' proposed Notice of Settlement; (5) approving the appointment of the Settlement Administrator; and (6) scheduling a hearing on the final approval of the Settlement.

## II.    <u>PROCEDURAL HISTORY OF THE CASE</u>

### A.    THE PROCEEDINGS, PLEADINGS AND PARTIES

This action was filed on February 18, 2022, in the United States District Court for the District of Colorado, asserting the following claims:

| | |
|---|---|
| Count I: | Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* – Failure to Pay Overtime (Collective Action) |
| Count II: | Violations of the Arkansas Minimum Wage Act, Ark. Code Ann. §§ 11-4-201, *et seq.*, Ark. Code R. § 10-14.108 (Rule 23 Arkansas Class Action) |
| Count III: | Violations of the  Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq.* and Ohio Constitution Art. II, § 34a (Rule 23 Ohio Class Action) |
| Count IV: | Violations of the Virginia Minimum Wage Act and the Virginia Overtime Wage Act, Va. Code Ann. §§ 40.1-28, *et seq.* and 40.1-29.2, *et seq.*   (Rule 23 Virginia Class Action) |
| Count V: | Nationwide Breach of Contract (Rule 23 Class Action) |
| Count VI: | Nationwide Unjust Enrichment (Rule 23 Class Action) |

[ECF No. 1].

On March 18, 2022, Defendant filed its Answer, which denied all of Plaintiff's allegations. Further, Defendant asserted 13 affirmative and other defenses, including, among others: 1) that Plaintiffs and the putative class members were paid for all work performed; 2) that Plaintiffs and the putative class members are not entitled to liquidated damages or an extended (third year) statute of limitations because Defendant's actions were not willful and it acted in good faith; and 3) that the alleged off-the-clock work was not compensable under the *de minimis* doctrine. [ECF No. 12].

On April 11, 2022, Plaintiffs filed their Pre-Discovery Motion for Conditional Collective Certification, asking the Court to conditionally certify a collective of customer service representatives. [ECF No. 16]. On May 23, 2022, Defendant responded to Plaintiffs' Motion [ECF

No. 34] and on June 6, 2022, the briefing on Plaintiffs' Motion concluded with Plaintiffs' Reply. [ECF No. 35].

On March 31, 2023, then-Magistrate Judge Crews issued his Report and Recommendation that Plaintiffs' Motion for Conditional Certification be granted in part and denied in part, with the following collective being conditionally certified for purposes of Plaintiffs' FLSA claim(s): All current and former hourly customer service representatives (CSRs) who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment. [ECF No. 49].

On April 14, 2023, Defendant filed its Objections to the Magistrate Judge's Recommendation, and on April 26, 2023 [ECF No. 50], Plaintiffs filed their Response to Defendant's Objections. [ECF No. 51].

On February 21, 2024, this Court, *inter alia*: (1) rejected in part and sustained in part Defendant's Objections; (2) adopted in part and rejected in part Magistrate Judge Crews' Report and Recommendation; (3) granted Plaintiffs' Motion for Conditional Certification; (4) conditionally certified this action as a collective action pursuant to 29 U.S.C. § 216(b); and (5) ordered Defendant to provide Plaintiffs' counsel the names, physical addresses, email addresses, and telephone numbers for all putative members of the FLSA collective in an electronically readable and importable format. The Court defined the collective action members as follows: "All current and former hourly call center workers, including but not limited to: Customer Service Representatives, Engagement Specialists, and Technical Support Representatives (collectively, "Customer Service Representatives") who work or have worked for Startek USA, Inc. at any time from February 20, 2021, to the present." (*Id.*). [ECF No. 54].

On February 23, 2024, Plaintiffs filed a Motion for Equitable Tolling and the briefing on

3

Plaintiffs' Motion concluded with the filing of Defendant's Sur-Reply on April 5, 2024. [ECF No. 55].

On April 10, 2024, the Court granted Plaintiffs' Motion for Equitable Tolling and redefined the collective action members as follows: All current and former hourly call center workers, including but not limited to: Customer Service Representatives, Engagement Specialists, and Technical Support Representatives (collectively, "Customer Service Representatives") who work or have worked for Startek USA, Inc. at any time from June 8, 2019 to the present. [ECF No. 70].

On April 24, 2024, Defendant provided Plaintiffs' counsel the names, physical addresses, email addresses, and telephone numbers for 20,012 putative members of the FLSA collective. (Exh. B, Stoops Decl. at ¶ 22). Following the Court's orders granting two motions to modify notice, Notice was issued on May 3, 2024, to the putative FLSA collective members identified on Defendant's April 24th spreadsheet. (*Id.* at ¶ 23).

Starting on or around May 15, 2024, Plaintiffs' counsel and the Notice Administrator received calls and/or correspondence from individuals to whom notice had not been sent but who believed they fit the collective definition and were eligible to join this case. (*Id.* at ¶ 24). On June 18, 2024, Defendant's counsel advised Plaintiffs' counsel that Defendant "inadvertently missed a small group of individuals that worked as CSRs but were then promoted to supervisor positions. These individuals should have been included in the original list for at least their limited time as non-exempt CSRs." Counsel's correspondence attached a supplemental class list of 184 individuals and indicated that, "[t]o remedy this issue, we are willing to agree to the individuals on this list receiving notice per the Court's Order and having 60 days to opt-in." (*Id.* at ¶ 25).

On June 20, 2024, the Parties filed a Joint Motion to Issue Notice to the 184 individuals. [ECF No. 87]. The same day, the Court granted the Parties' Motion. Notice was issued to the 184

putative plaintiffs on June 24, 2024. [ECF No. 88].

On July 25, 2024, the Parties filed a Joint Motion to Stay Case and Toll the Statute of Limitations for Rule 23 Class Members. The purpose of the Motion was to stay all case deadlines to allow the Parties to prepare for and participate in mediation and to toll the limitations period for the claims of all would-be Rule 23 class members of Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Pennsylvania, South Carolina, and West Virginia. [ECF No. 94].

On August 24, 2024, the second Opt-in Period closed. In total, there are 4,384 FLSA opt-ins. (Exh. B, Stoops Decl. at ¶ 29).

Over the next few months, the Parties conducted numerous meet and confer conferences regarding the viability of Plaintiff's claims and the possibility of exploring resolution prior to issuance of conditional notice. (*Id.* at ¶ 30). Ultimately, the Parties agreed to attend mediation and exchange voluntary discovery including class-wide pay and time records to assist with that mediation. (*Id.* at ¶ 31).

On January 16, 2025, the Parties attended a private mediation with well-respected wage and hour mediator Michael Russell of Nashville, Tennessee. (*Id.* at ¶ 32). After a full day mediation, the Parties were not able to reach an agreement. (*Id.* at ¶ 33).

On January 27, 2025, Plaintiffs filed their First Amended Complaint adding claims arising under the wage and hour laws of the states of: Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Pennsylvania, South Carolina and West Virginia. [ECF No. 105]. Over the next few weeks the Parties held numerous meet and confer conferences to discuss the scope of representative discovery and to prepare an amended scheduling order. (Exh. B, Stoops Decl. at ¶ 35).

From February through June 2025 the Parties engaged in negotiations – direct and with the

assistance of Mediator Russell. The Parties negotiations consisted of dozens of emails, telephone calls and meetings. (*Id.* at ¶ 36). The Parties ultimately reached a settlement in principal on June 10, 2025. (*Id.* at ¶ 37). Over the next few weeks, the Parties negotiated and finalized the Settlement Agreement, which is now before the Court for preliminary approval. (*Id.* at ¶ 38). At all times, the Parties' settlement negotiations have been non-collusive, adversarial, at arm's length, and with the assistance of a well-respected third-party mediator. (*Id.* at ¶ 39).

**B.     SUMMARY OF DISCOVERY CONDUCTED PRIOR TO SETTLEMENT**

Plaintiffs' Counsel based the Complaint upon substantial pre-filing research, both factual and legal. With respect to discovery, Plaintiffs' Counsel was responsible for reviewing and analyzing the following materials, that consisted of multiple documents and substantial electronic data:

a.     Information pertaining to the number of Class Members employed by Defendant during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; hours worked per week; total weeks worked; total shifts worked; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

b.     Data modeling and related statistics identifying the alleged off-the-clock work performed by Plaintiff and the Class Members;

c.     Voluminous time and pay records for Plaintiffs and the Class Members;

d.     Training and Policy materials; and

e.     Offer letter and other employment documents related to Plaintiffs.

(Exh. 2, Stoops Decl. at ¶ 42).

Throughout the litigation, and in connection with the mediation process, Defendant asserted numerous legal and factual defenses to Plaintiffs' claims and class certification efforts, including, among others, that:

    a.  A large portion of the putative Class Members were subject to binding arbitration agreements and class action waivers.

    b.  The time Plaintiffs and the Class Members sought compensation for was not compensable under the FLSA or any state wage and hour law.

    c.  The time Plaintiffs and the Class Members sought compensation for was not compensable because it was *de minimis*.

    d.  Defendant maintains written employment policies that require employees to report all hours worked and prohibit employees from performing any off-the-clock work.

    e.  Defendant instructs and requires employees to report any suspected violation of Defendant's policies prohibiting off-the-clock work.

    f.  Defendant will tender Class Members to testify that they did not work off-the-clock and/or that any off-the-clock work alleged by Plaintiffs is greatly exaggerated.

    g.  The Class Members engaged in personal, non-compensable activities at the beginning of their shifts.

    h.  Plaintiffs' allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks she describes.

    i.  The putative Class Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing any alleged off-the-clock work.

    j.  Plaintiffs and the Class Members were paid for all worked performed.

    k.  The putative Class Members will not satisfy the requirements for certification under Rule 23 or the Section 216(b) of the FLSA.

    l.  Plaintiffs will not be able to establish that Defendant's alleged violations, if any, were willful.

    m.  Plaintiffs and the putative Class Members will not be able to recover liquidated damages.

(*Id.* at ¶ 48).

       The existence of Defendant's factual and legal arguments weighed on Plaintiffs' decision to settle the case. While Class Counsel understandably takes issue with the viability of some of

these defenses, the risks associated with the continued litigation of Plaintiffs' wage claims simply cannot be disregarded in measuring the reasonableness of the settlement. Specifically, settling this case now saves Plaintiffs from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation. Should the parties have continued to litigate the case, Plaintiff would have been no less than 6 to 12 months of additional formal discovery (individual class member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by Rule 23 certification motion practice on Plaintiffs' various state law claims, numerous dispositive motions, and eventually one or more trials. It is very likely that this litigation would extend for another two to three years and cost the Plaintiff $500,000 to $1,000,000 (or more) in attorneys' fees and expenses. (*Id.* at ¶ 49).

## C.    DEFENDANT'S ESTIMATED EXPOSURE

To evaluate and negotiate settlement and take part in mediation, Plaintiffs' Counsel prepared a time consuming and complicated damage analysis of all claims at issue in this case. (Exh. 2, Stoops Decl. at ¶ 50).

The first objective of the analysis was to identify the class metrics. In connection with that task, the following metrics were ascertained based on timekeeping and pay records for the relevant statute of limitations periods through the time of mediation:

- 4,384 FLSA opt-ins;

- 8,668 Rule 23 State Law Class Members;

- 10,742 Breach of Contract/Unjust Enrichment Class Members;

- Average hourly rate of $13.01;

- 694,069 total workweeks; and

- Only 20.38% of the workweeks had hours worked equal to or exceeding 39 hours.

(*Id.* at ¶ 51).

Next the analysis identified the possible damages that could be recovered for each of the claims in the litigation (with the damages extrapolated through the date of mediation, January 16, 2025). (*Id.* at ¶ 52). Having handled numerous call center cases across the country and having reviewed settlements from many other call center cases, the typical settlement in these cases reflect payments of four to six minutes of work per shift. (*Id.* at ¶ 53).

Based on the damage analysis conducted by Plaintiffs' Counsel and upon applying the typical recovery window of four to six minutes per shift – *and* with inclusion of FLSA liquidated damages *and* gap time damages in weeks where the FLSA Opt-Ins were not entitled to overtime compensation – the range of recovery for the 4,384 FLSA Opt-Ins would fall between $780,620 to $1,170,930. (*Id.* at ¶ 54).

Based on the damage analysis conducted by Plaintiffs' Counsel and upon applying the typical recovery window of four to six minutes per shift – *and* with inclusion of state specific damages *and* gap time damages in weeks where the Rule 23 State Law Class Members were not entitled to overtime compensation – the range of recovery for the 8,668 Rule 23 State Law Class Members would fall between $1,707,084 to $2,560,626. (*Id.* at ¶ 55).

Throughout the Parties' settlement negotiations Defendant placed no settlement value on the claims of the Rule 23 Breach of Contract/Unjust Enrichment Class Members because, among other things: a) the Class Members had not opted in to the FLSA collective and thus do not have viable FLSA claims; b) the Class Members did not work in a state with viable wage and hour protections; and c) the Class Members will not be able to certify nationwide breach of contract and unjust enrichment claims meaning that their claims will be dismissed and they will not be entitled

9

to any recovery. (*Id.* at ¶ 56). Based on these factors the Parties negotiated a pool of $163,590 to be payable to the Rule 23 Breach of Contract/Unjust Enrichment Class Members in the amount of $15 per person. (*Id.* at ¶ 57).

The $2,500,000 Gross Settlement Fund equates to approximately 66.99% to 100.4% of the $2,487,704 to $3,731,556 of Defendant's maximum alleged damage exposure (based on the 4 to 6 minutes per shift that is recovered in the vast majority of call center settlements). (*Id.* at ¶ 58). Consequently, there can be no question that the settlement amount is substantial, completely reasonable, and marks a fair compromise. (*Id.* at ¶ 59).

### D.    THE SETTLEMENT AGREEMENT

The Settlement Agreement's material terms are briefly summarized below, but the full Settlement Agreement is attached hereto as Exhibit A.

### 1.    <u>The Class Members.</u>

For purposes of settlement only, the parties have agreed to certification of the following Class and Collective pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) of the following individuals:

➢ "FLSA Class Member" means the 4,384 individuals who opted in to the Action by filing written consent to join forms.

➢ "Rule 23 State Law Class Member" means the approximately 8,668 individuals (as identified by Defendant in its mediation production) who worked for Defendant in the following states during the Class Period but did not opt in to the Action: Arkansas, Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia.

➢ "Rule 23 Breach of Contract Class Member" means the approximately 10,906 individuals (as identified by Defendant in its mediation production) who did not opt in to the action and who worked for Defendant during the Class Period in states other than the following: Arkansas, Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia.

(Exh. A, ¶¶ 6, 25, 26).

### 2. **The Monetary Payments.**

Defendant has agreed to pay a total Gross Settlement Fund of $2,500,000 (in addition to Defendant's employer-side tax obligations arising out of the Settlement). (Exh. A, ¶ 21). If approved by the Court, the following amounts will be deducted from the Gross Settlement Fund: $833,333.33 for Class Counsel's attorneys' fees (33-1/3% of Global Settlement Fund); up to $55,000 for litigation expenses; up to $81,000 for settlement administration fees; and cumulative service awards in the amount of $51,000 for the Named Plaintiffs. (*Id.* at ¶ 45). The remaining balance of the settlement fund, the "Net Settlement Amount," will be distributed to the Settlement Class Members as follows:

a. <u>Rule 23 Breach of Contract Class Member Payments:</u> $163,590 of the Net Settlement Amount will allocated to the Rule 23 Breach of Contract Class Member Payment pool and will be used to satisfy the claims of the approximately 10,906 Rule 23 Breach of Contract Class Members. Each Rule 23 Breach of Contract Class Member will be issued an Individual Settlement Amount in the amount of $15. (*Id.* at ¶ 45(b)).

b. <u>FLSA Class Member Payments:</u> After deduction of the $163,590 Rule 23 Breach of Contract Class Member Payment pool from the Net Settlement Amount, 50% of the remaining balance will be allocated to the FLSA Class Member Payment pool. The Settlement Administrator will calculate the total amount that each FLSA Class Member will receive. The Settlement Administrator will divide the FLSA Class Member Payment pool by the total number of workweeks FLSA Class Members were employed during the Class Period ("Workweek Amount"). The Settlement Administrator will multiply the Workweek Amount by the total number of workweeks that each FLSA Class Member was employed during the Class Period to arrive at an estimated Individual Settlement Amount. (*Id.*).

c. <u>Rule 23 State Law Class Member Payments:</u> After deduction of the $163,590 Rule 23 Breach of Contract Class Member Payment pool from the Net Settlement Amount, 50% of the remaining balance will be allocated to the Rule 23 State Law Class Member Payment pool. The Settlement Administrator will calculate the total amount that each Rule 23 State Law Class Member will receive. The Settlement Administrator will divide the Rule 23 State Law Class Member Payment pool by the total number of workweeks Rule 23 State Law Class Members were employed during the Class Period ("Workweek Amount"). The Settlement Administrator will multiply the Workweek Amount by the total number of workweeks that each Rule 23 State Law Class Member was employed during the Class Period to arrive at an estimated Individual Settlement Amount. (*Id.* at ¶ 4).

d. Each FLSA Settlement Payment Check shall be affixed with the following endorsement:

> By cashing this Settlement Payment check, I am consenting to join the FLSA Collective and fully, finally, and forever releasing, settling, compromising, relinquishing, and discharging the Released Parties from all claims, rights, demands, liabilities, and causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Action or could have been alleged in the Action based on the facts and claims asserted in the operative complaint while I worked for Defendant for the period of February 18, 2019 through [the Effective Date]. The claims released by me include all claims for unpaid wages under the federal Fair Labor Standards Act ("FLSA"), and applicable state and municipal law (including common law, statutes, ordinances, and regulations). (*Id.* at ¶ 45(c)).

e. Individual Settlement Amounts will be allocated as follows: 50% as wages subject to withholding under an IRS Form W-2; and 50% payable as liquidated damages under an IRS Form 1099, with nothing withheld from such payments. (*Id.* at ¶ 45(a)).

f. Any checks issued to Settlement Class Members will remain valid and negotiable for one hundred and eighty (180) days from the date of their issuance. After that time, any such uncashed check proceeds will be returned to Defendant. (*Id.*).

g. If the actual number of Rule 23 State Law Class Members or Rule 23 Breach of Contract Class Members exceeds the amount of Class Members identified by Defendant at settlement (8,668 Rule 23 State Law Class Members; 10,906 Rule 23 Breach of Contract Class Members) by more than 10%, Plaintiff shall have the sole and absolute discretion to terminate the Settlement unless Defendant agrees to increase the Gross Settlement Amount proportionate to the number of additional class members in excess of the above listed class member amounts based on the additional aggregate work weeks during the Class Period of the original 8,668 Rule 23 State Law Class Members and 10,906 Rule 23 Breach of Contract Class Members. (*Id.* at ¶ 46).

### 3. **The Release.**

The Settlement Agreement includes a release of:

Defendant, and its affiliates and related entities, including, without limitation, its parents and subsidiaries, owners, predecessors, successors, divisions, joint ventures and assigns, clients, and each of their past, present and/or future direct and/or indirect directors, officers, employees, partners, members, investors, principals, agents, insurers, co-insurers, re-insurers, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, attorneys, and personal or legal representatives. ("Released Parties"). (Exh. A, ¶ 22).

The Released Parties are released from:

[A]ll claims for unpaid wages that have been alleged or that could have been alleged in the Action including all of the following claims for relief: (a) that Defendant failed to pay and/or properly calculate all wages due, straight time, overtime, double-time, premium pay, minimum wages, and all other forms of wages; (b) that Defendant failed to maintain required records; (c) that Defendant owes other monies or penalties under the FLSA and any other state wage and hour laws (including without limitation the state wage laws identified in Plaintiffs' First Amended Complaint); and (d) that Defendant is responsible for the payment of damages, penalties, interest, and other amounts recoverable under said causes of action, including without limitation the following claims based on or reasonably relating to claims asserted or alleged in the action: claims for unpaid wages (including claims for regular wages, overtime, regular rate calculations, gap time, off-the-clock or unpaid time, and breaks) under the Fair Labor Standards Act, 29 U.S.C. §201, et seq., state wage and hour laws, and state common law theories, including without limitation breach of contract and unjust enrichment. The Released Claims also include all claims that Plaintiff and the Settlement Class Members may have against the Released Parties relating to (i) the payment and allocation of attorneys' fees and costs to Class Counsel pursuant to this Agreement, and (ii) the payment of the Class Representative Service Awards pursuant to this Agreement. The period of the Release shall extend commensurate with that of the Class Period, as defined above. (*Id.* at ¶ 21)
.
Plaintiffs will be subject to a general release. (*Id.* at ¶ 41).

The releases in the Settlement Agreement run from February 18, 2019, through March 17, 2025. (*Id.* at ¶ 7).

## 4.  **Notice, Request for Exclusion, Objection Periods.**

This is a common fund settlement and every participating class member (i.e., those who do not timely opt-out) will automatically be sent checks containing their Individual Settlement Amount. (Exh. A, ¶ 45(a)).

The Settlement Administrator will provide Notice of the Settlement to the Class Members by U.S. Mail. (*Id.* ¶ 44(a)). The Notice of Settlement, attached at Exhibit A to the Settlement Agreement, has been drafted to efficiently yet comprehensively describe the terms of the Settlement. The Settlement Administrator shall issue the Notice of Settlement no later than 14 days after the Court's Preliminary Approval Order. (*Id.*).

Class members who want to be excluded from the Settlement must mail a written Request for Exclusion form to the Settlement Administrator no later than 45 days after the original mailing of the Class Notice. (*Id.* at ¶ 45(f)) Class Members will also have 45 days from the mailing of the Notice of Settlement to object to the Settlement, and the Class Notice provides details on these objection procedures. (*Id.* at ¶ 45(g)).

## III. <u>LEGAL ANALYSIS</u>

### A. <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.</u>

It is long-settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910). Likewise, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Case v. Plantation Title Co.*, 2015 U.S. Dist. LEXIS 33580, *22 (D.S.C. Mar. 5, 2015). The rationale for this policy is simple. "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd*, 525 U.S. 315 (1999).

The Parties' Settlement Agreement is a hybrid agreement, resolving both the FLSA, and state wage and hour and unjust enrichment claims. Hybrid agreements of this nature have been previously approved in this District:

> While courts across the country have reached differing conclusions as to whether a Rule 23 state law wage claim may proceed in the same action as an FLSA collective wage claim, the most recent cases arising in this District tend toward approving such arrangements. This case is at the settlement stage and both sides have agreed to treat the settlement as a hybrid action. The putative Class Members are identical for the FLSA claims and the state [Minimum Wage Order] claims. The putative Class Members in this case are low wage employees of a restaurant, many of whom are not United States citizens. With the vehicle of class notice, most would never

14

> know of the alleged wage violations and would have never brought overtime issues
> to the attention of the employer. With ample current precedent to support
> proceeding with a hybrid class action, the court will allow such a settlement class
> here.

*Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016).

Fed. R. Civ. P. 23(e) provides a class action can be settled only with court approval. Such approval typically involves a two-step process consisting of (1) preliminary approval of the settlement and notice to all class members, and (2) a final fairness hearing. *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013).

Preliminary approval of a class action settlement is thus a provisional step. At the preliminary approval stage, the Court determines only whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). A settlement should be preliminarily approved if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Motor Fuel Temp. Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted). The standards for preliminary approval are less stringent than at the final approval stage. *In re Crocs*, 2013 WL 4547404, at *3 ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is … 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.") (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). Moreover, in evaluating a proposed settlement, "courts are not to decide the merits of the case or resolve unsettled legal questions," because "the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284-85 (D. Colo. 1997) ("[The Court's] role at this stage of the proceeding

is not to evaluate the merits of the litigation, since this would contravene the parties' decision to 'waive their right to litigate the issues involved in the case and thus save themselves the time, and the inevitable risk of litigation.'") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). *See also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

(1)     whether the proposed settlement was fairly and honestly negotiated;

(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Although the Court will scrutinize these factors more closely at the final approval hearing, they provide a useful guide at the preliminary approval stage. *See Tuten*, 41 F. Supp. 3d at 1007-8. In consideration of these factors, preliminary approval of the Settlement Agreement is warranted.

### 1.     <u>The Proposed Settlement was Fairly and Honestly Negotiated</u>

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may

have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson*, 171 F.R.D. at 283 (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. The Parties engaged in voluminous informal discovery regarding the merits of the claims and Defendant's defenses. Further, Plaintiffs' Counsel prepared a thorough and complicated damage analysis.

Through these efforts, each party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

### 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of this Action in Doubt

To continue through discovery, motion practice and trial would expose the parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Plaintiffs believe that their claims are strong, but recognize that success is not guaranteed. With respect to the merits of Plaintiffs' claims, Plaintiffs believe that they will prevail in demonstrating that they performed compensable off-the-clock work and are owed overtime and regular wages under the FLSA and state law. Defendant,

17

however, contends that the alleged work is 1) not compensable; and 2) *de minimis*. Defendant further contends that Plaintiffs would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine the off-the-clock work performed, if any, and the amount of hours worked by the class member during the applicable work period (necessary to establish 40 hours of work in a given week to garner protection under the FLSA). Nonetheless, while Defendant believes that its defenses are strong, it recognizes that it may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Second, the parties dispute the viability of Plaintiffs' breach contract and unjust enrichment claims and the amount of damages entitled to the Class under the FLSA and other state wage and hour laws in the states where the class members worked. Third, the Parties dispute the viability of the damages for gap time (e.g. alleged off-the-clock work that is not overtime) in the states involved in the action. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

"Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA, v General Motors Corp.,* 238 F.R.D. 583, 596 (E.D. Mich 2006). To say the least, Defendant would continue to vigorously defend this case through trial. Because of the complexities in identifying the specifics as to the off-the-clock work, attributing responsibility for the technical issues under the law, the outcome of a potential trial is uncertain

should the case go forward. Given that the Settlement provides substantial and immediate relief without these additional expenses and long delay, this factor militates in favor of settlement. *See, e.g., Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (concluding that "[d]elay, not just at the trial stage but through post-trial motions and the appellate process would cause Class Members to wait years for any recovery"). This, of course, is not to mention any appeals of class certification under Rule 23(f) or the final orders and judgment. Moreover, the present proposal achieves these benefits on a *class-wide* basis while eliminating the potential pitfalls of trial, or even multiple trials, in the face of Defendant's vigorous objections.

### 3. The Value of Immediate Recovery Outweighs the Possibility of any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties will engage in additional discovery, including depositions of numerous Defendant witnesses, the Named Plaintiffs, and countless opt-in Plaintiffs. The parties would also have to engage in extensive motions practice including completing briefing on decertification, final certification, class certification, and multiple Motions for Summary Judgment. Should the case withstand these stages, it would be set for a lengthy and complicated trial that would include testimony from numerous employees and witnesses located across the country. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. It is very likely that this litigation would extend for another

19

two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. (Exh. B, Stoops. Decl. at ¶ 49). Moreover, natural attrition factors would come to bear on the class such that any ultimate relief obtained would likely not apply to hundreds of class members.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendant which would then require post-judgment collection efforts to satisfy. Based on these circumstances, it is prudent for the parties to "take  the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved. *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial . . . . Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

"The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). However, the "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

This case was sufficiently advanced at the point that settlement was reached. (Exh. B,

Stoops Decl. at ¶¶ 12-62). Prior to reaching a settlement, the Parties engaged in a combination of formal and informal discovery and Class Counsel conducted an extensive investigation relating to the class claims and the underlying events and transactions, and researched the applicable law with respect to the potential claims and defenses. The investigation and discovery conducted by the Parties in this case was comprehensive and time-consuming. Indeed, there is no dispute that the Parties thoroughly investigated the relevant facts and legal issues through every means available. Such an undertaking yielded substantial information, which allowed the Parties to discuss intelligently and freely the pros and cons of settlement.

### 4. Counsel Believe the Settlement is Fair and Reasonable

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored preliminary approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

As described above, the proposed settlement provides a significant remedy - $2,500,000 - on a *class-wide basis* to Class members who may not attain any benefit whatsoever absent the proposed settlement. The $2,500,000 Gross Settlement Fund equates to approximately 66.99% to 100.4% of the $2,487,704 to $3,731,556 of Defendant's maximum alleged damage exposure

21

(based on the 4 to 6 minutes per shift that is recovered in the vast majority of call center settlements). (Exh. B, Stoops Decl. at ¶ 58).

Settlement Awards will be paid to the Class Members without any claims process and without (except for checks not cashed within 180 days) any reversion to Defendant.

Finally, the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." quoting *Granada Inv., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992). The Settlement here is consistent with the public interest because it provides substantial unpaid wages claim relief for the Class Members in a timely manner and conserves scarce judicial resources.

When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

5.      **The Settlement Class Satisfies the Requirements of Rule 23(a) and (b)(3) for Purpose of Final Certification**

Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues" and serves various "important objectives," such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig,* 55 F.3d 768, 783-84 (3d Cir. 1995). "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* at 784 [quotations omitted].

(i)      *Rule 23(a)(1)'s Numerosity Requirement is Satisfied*

The numerosity requirement is met if the class is so large that joinder of all members would be impractical.  Fed. R. Civ. P. 23(a)(1). Here, there are approximately 24,000 putative members of the Class, satisfying the numerosity requirement. In a similar case, a Court in this District found the joinder of between fifty and three hundred pizza delivery drivers to be impractical. *Bass v. PJCOMN Acquisition Corp.*, No 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, *6 (D. Colo. June 1, 2011). In another District of Colorado case, Judge Krieger found one hundred potential class members to be "a number that certainly prevents effective joinder here." *A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-cv-22293-MSK-MJW, 2012 U.S. Dist. LEXIS 139241, 14-15 (D. Colo. Sept. 26, 2012). These numbers, and the widespread geographic locations at issue, are sufficient to satisfy the numerosity requirement, as joinder of this many individuals would be impracticable.

### (ii)     *Rule 23(a)(2)'s Commonality Requirement is Satisfied*

Fed. R. Civ. P. 23(a)(2) requires questions of law and fact to be common to the class.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). "[E]very member of the class need not be in a situation identical to that of the named plaintiff". *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Rather, "[c]ommonality exists if class members differ factually but challenge the application of a commonly-applied policy." *A-W Land Co., LLC*, 2012 U.S. Dist. LEXIS 139241, at*9.

Here, the primary questions of law and fact central to the claims against Defendant include:

      a.     Whether the off-the-clock work activities performed by the Class Members is compensable time under the law;

      b.     Whether the class members are owed wages (above the federally mandated minimum wage and overtime due under the FLSA) for time spent

performing pre-shift, mid-shift, or post-shift activities, and if so, the appropriate amount thereof;

c.     Whether Defendant's non-payment of wages resulted in a breach of contract/ unjust enrichment;

d.     Whether Defendant violated any other statutory provisions regarding compensation due to the class members; and

e.     Whether the class members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

### (iii)    *Rule 23(a)(3)'s Typicality Requirement is Satisfied*

To satisfy the typicality requirement Fed. R. Civ. P. 23(a)(3), the Named Plaintiffs must show that their claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *In re Qwest Savings and Investment Plan ERISA Litigation*, No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at *14-15 (D. Colo. Sept. 24, 2004). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, the Named Plaintiffs meet the typicality requirement because they allege that they, and the many other customer service representatives employed by Defendant, were not paid wages and overtime because of Defendant's company-wide and uniform policy of failing to pay for certain off-the-clock work. Named Plaintiffs' legal claims are typical of those of the Class as a whole because they apply the same legal theory to the same policies and practices.

### (iv)    *Rule 23(a)(4)'s Adequacy Requirement is Satisfied*

Fed. R. Civ. P. 23(a)(4) requires that the representative parties to a class action fairly and

adequately protect the interests of the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez*, 268 F.R.D. at 396- 397 (internal citation omitted). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002)(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration…" *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

The adequacy of representation requirement is met here. Named Plaintiffs understand and accepted the obligations of class representatives, and have adequately represented the interests of the putative class. Indeed, Named Plaintiffs have devoted much time and effort in prosecuting the class claims and assisting their counsel with investigating and litigating the case.

Named Plaintiffs also retained experienced counsel who routinely handle numerous FLSA class actions, typically as lead or co-lead counsel. (Exh. B, Stoops Decl. at ¶ 8).

(v)    *Rule 23(b)(3) is Satisfied*

Here, Plaintiffs seek final class certification under Rule 23(b)(3), which provides:

A class action may be maintained if. . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"[Rule 23(b)(3) encompasses those cases in which a class action would achieve economies

of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Notes of Advisory Committee on Rules, 1966 Amendment. Class actions may be certified where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means of adjudicating the controversy. The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Although Fed. R. Civ. P. 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler* v. *G.D. Searle & Co*., 82 F.R.D. 339, 348- 49 (N.D. Ill. 1978); *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Sys.*, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).

Here, the alleged company-wide pay policies affected the claims of Defendant's current and former customer service representatives. Thus, while there may be some variation among individual class members' claims (*e.g.*, the actual amount of damages), common questions of law and fact predominate for settlement purposes. Named Plaintiffs maintain that these issues present common operative facts and common questions of law which predominate over any factual variations in the application of the classification and compensation policies to individual home-based agents.

The Court must also consider if a class action is superior to individual suits. *Amchem*, 521

U.S. at 615. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). Here, as in *Hanlon*, the alternative methods of resolution are individual claims for relatively small amount of damages. These claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* The Settlement Agreement provides the class members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured class member will obtain necessary and timely relief at the conclusion of the litigation process. The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. Litigation costs for approximately 24,000 individual claims would surely surpass the average recovery for each class member.  For these reasons, the proposed Settlement Class should be certified.

### 6.    <u>The Standard for FLSA Settlement Approval</u>

FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55; *see also Latham v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 16490, *3 (M.D.N.C. Jan. 14, 2014). For all of the foregoing reasons analyzed under Rule 23 standards, this settlement is a fair and reasonable compromise and should be approved under the appropriate FLSA standards.

27

**B.** **THE PROPOSED NOTICE AND NOTICE PLAN IS PROPER AND SHOULD BE APPROVED BY THE COURT.**

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. *See Lucas*, 234 F.R.D. at 696. Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001). These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

A Rule 23(e) settlement notice must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 Newberg on Class Actions § 11:53 (4th ed. 2002); *see also Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 2650037, at *3-4 (D. Colo. June 30, 2010) (notice sufficient where it informed class members of the nature of the lawsuit, their right to opt out and object, the settlement terms, and the binding effect of the settlement on settlement class members who do not opt out).

The proposed Notice satisfies all these elements. (Exh. A, at Exh. A). *First*, it explains the nature of the action, in particular that it pertains to all customer service representatives who worked for Defendant during the class period. *Second*, the Notice apprises class members of the pendency of the settlement and informs them of all material settlement terms. The Notice explains that class members who "do nothing" will remain in the Settlement Class, receive a settlement payment, and be bound by the settlement and all orders and judgments. The Notice also explains what rights the

28

class members will release, including their rights under the FLSA, by cashing their settlement share check. The Notice describes how to opt out of the settlement, informs Class Members that they will receive a share of the Settlement Amount based on their total number of work hours and rate of pay. *Third*, the Notice advises Class Members that they can examine the Settlement Agreement and all other pleadings from this lawsuit through the Court. In addition, a website will be created to host the relevant documents and list the frequently asked questions and answers commonly lodged in counsels' experience. And lastly, a 1-800 number will be available for Class Members to call the settlement administer with logistical questions about filling out forms etc. Finally, Class Members are provided full notice of their right to file objections, attend the final approval hearing, or hire their own attorney at their expense.

The proposed manner of notice and timetable for further proceedings are also reasonable. Notice will be sent to Class Members by first-class mail to their last known address with 15 days after the Settlement is preliminarily approved and will also be sent via email to those class members with last known email addresses. Notices returned as undeliverable will be re- mailed using the most recent contact information from available databases. Likewise, class members will have a reasonable amount of time, 45 days from the date the notice is mailed, to object to the Settlement or mail an election not to participate form. Courts have routinely found a 45- day period to be reasonable and have even approved shorter periods. *See DeJulius*, 429 F.3d at 945-47 (32 days); *Bryant v. Act Fast Delivery of Colo., Inc.*, 2015 WL 392663, at *5 (D. Colo. June 25, 2015) (45 days).

In summary, the parties have jointly prepared a Settlement Notice to the Class Members that is consistent with all class action notice requirements. This notice plan is commonly used today and meets the Rule 23 standards for reasonableness.

**C.  THE REQUESTED SERVICE AWARDS TO NAMED PLAINTIFFS, AND ATTORNEYS' FEES AND LITIGATION EXPENSES TO CLASS COUNSEL, ARE PROPER AND SHOULD BE APPROVED BY THE COURT.**

**1.  Service Awards to Named Plaintiffs**

Class Counsel requests the approval of service awards in the aggregate amount of $51,000 to be distributed as follows to the Named Plaintiffs: $6,000 each to the three Named Plaintiffs who initiated this action;[1] and $1,500 each to the Named Plaintiffs who joined this action in connection with the filing of Plaintiffs' First Amended Complaint.[2] to be distributed equally among the two Named Plaintiffs (Janet Shaulis and Jewel Arlene Key).

"Incentive awards are routinely approved in class actions to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *In re Wachovia Corp. ERISA Litig.*, 2011 U.S. Dist. LEXIS 123109, *31 (W.D.N.C. Oct. 24, 2011). Service payments are especially appropriate in employment litigation, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Courts around the country have approved substantial service/incentive payments in FLSA collective actions and other employment-related class actions. *See*, e.g., *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) ($7,500 award); *In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 U.S. Dist. LEXIS 60790, 2009

---

[1] Makayla Harris, Colleen Lewin and Tiffany Williams.
[2] Daniel Colwill Mauch, Kristopher Flagg, Matthew Berg, Alicia Jenkins, Anissa Bates, Brittany Young, Kimberly Pitney, Dawn Badger, Paula Kemp, Rhonda Davis, Tiffany Patterson , Brittney Christian, Phanthasia King, Tauri Schuler-Bonner, Amelia Kurtz, Matthew Pavey, Rachel Dubose, Lexus Ransom, Claudine Miudo. Richard Dean, Stephanie St. George and Sasha Ransey.

WL 2137224, *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named Plaintiffs) (unpublished); *Bredbenner v. Liberty Travel, Inc.,* 2011 U.S. Dist. LEXIS 38663, 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000 to eight named plaintiffs; citing 2006 study referenced in 4 Newberg on Class Actions § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000) (unpublished).

Here, the Named Plaintiffs stepped forward from among the class and each undertook burden and risk on behalf of the Class. They incurred significant demands on their time and expenses, including multiple consultations and correspondence with Plaintiffs' counsel, research of past documents and records, search of e-mail and texts, and participation in settlement negotiations. Accordingly, service awards in the aggregate amount of $51,000 to the Named Plaintiffs are appropriate.

## 2.  Attorneys' Fees

For the reasons stated below, Class Counsel propose that the court use the percentage of the fund method in awarding fees, and award 33 and 1/3% of common fund as the appropriate fee award in this instance. This will equate to attorneys' fees in the amount of $833,333.33.

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine," a reasonable fee may be based "on a percentage of the fund bestowed to the class."  The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). District courts within the Tenth Circuit follow this rule. *See e.g., Thompson v. Qwest Corporation*, 2018 WL 2183988, at *1 (D. Col. May 11, 2018) (33.3% of gross settlement awarded for attorneys fees); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (39% of

the fund awarded as fees); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.,* 2010
WL 5387559, at *5–*6 (D.Colo. Dec. 22, 2010)("The customary fee awarded to class counsel in
a common fund settlement is approximately one third of the total economic benefit bestowed on
the class.") (citing*, inter alia, Vaszlavik v. Storage Technology Corp.,* 2000 WL 1268824, *4
(D.Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range
of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%–
50% range and is presumptively reasonable.").

Class Counsel's 1/3 fee request is "reasonable" when reviewed against the work performed,
the results achieved and the risks taken. First, this litigation was hotly contested with experienced
and talented counsel representing both parties. The contested issues were complex, including class
certification, FLSA legal issues, state law wage and hour statues from numerous states, call center
operations, and multiple state-of-the-art software applications. Next, this action was prosecuted by
Class Counsel on an entirely contingent basis. Indeed, it is an established practice in the private
legal market to reward attorneys for taking the risk of non-payment by paying them a premium
over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic
Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Numerous cases recognize that the contingent fee
risk is an important factor in determining the fee award. "A contingency fee arrangement often
justifies an increase in the award of attorneys' fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335
(quoting *Behrens v. Wometco Enters., Inc.* 118 F.R.D. 534,548 (S.D. Fla. 1988), *affd* 899 F.2d 21
(11th Cir. 1990).[3]

The Court should consider society's stake in rewarding attorneys who produce a common

---

[3] *See In re Continental Illinois Sec. Litig*. 962 F. 2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel *must* be compensated adequately for the risk of non-payment).

benefit for class members in order to maintain an incentive to others. *F & M Distribs., Inc.* Sec. Litig., 1999 U.S. Dist. LEXIS 11090, at *18. ("Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee...."). As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this benefits society."). The proposed settlement confers benefits to approximately 24,000 customer service representatives across the United States, who without the Named Plaintiffs and Class Counsel, would not be receiving any unpaid wages. Absent class members will receive this benefit without filing suit or doing anything beyond cashing the checks sent to them. Thus they should also compensate the attorneys who obtained those benefits by paying the same 1/3 of their settlement benefits just like the Named Plaintiffs and FLSA opt-ins.

### 3.  Litigation Expenses and Settlement Administration Fees

In addition to their request for Attorneys' fees, Class Counsel seeks reimbursement of litigation expenses in an amount not to exceed $55,000 and settlement administration expenses in an amount not to exceed $81,000. The precise amounts will be determined and presented at the Final Approval Hearing, together with additional supported expenses up until the date of final distribution incurred in connection with settlement administration. Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, travel and other litigation-related expenses. "Expense awards are customary when litigants have created a common settlement fund for the

benefit of a class." *F & M Distribs., Inc.* Sec. Litig., 1999 U.S. Dist. LEXIS 11090, at *20. Class counsel has reviewed accounting records and invoices and can attest to the appropriateness and necessity of the costs. (Exh. B, Stoops Decl. at ¶ 74). Likewise, the requested settlement administration fees are appropriate and should be approved.  (*Id.* at ¶ 73).

### D.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

If the Court grants preliminary approval, the Court needs to set a date for a final approval hearing and that date will be included in the Notice of Settlement. Plaintiffs propose November 12, 2025, based on the following schedule of events:

| Due Date | Activity |
| --- | --- |
| July 1, 2025 | Complete Execution of Settlement Agreement |
| July 15, 2025 | File Motion for Preliminary Approval |
| July 25, 2025 | CAFA Notice Deadline |
| August 1, 2025 | Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval (estimated date) |
| August 15, 2025 | Defendant provides the Class Information for the Class Members to Settlement Administrator (14 days from Preliminary Approval) (proposed dates based on Order Granting Preliminary Approval being entered on August 1, 2025) |
| August 29, 2025 | Settlement Administrator to mail Notice Packet to the Class Members. (No later than 28 days from preliminary approval) |
| October 13, 2025 | Last day for Class Members to Object to the Settlement and file Request for Exclusion forms (45 days from Initial Mailing of Notice Packet) |
| October 20, 2025 | Deadline for Class Counsel to File Motion for Final Approval of the Settlement, Declaration from Administrator, and Motion for Attorneys' Fees (no later than 21 days after objection/exclusion deadline) |

34

| Due Date | Activity |
|---|---|
| November 12, 2025 at 10:00 a.m. | Proposed Final Approval Hearing Date/Time |

## IV.  CONCLUSION

For the foregoing reasons Plaintiffs respectfully request entry of an order: (1) preliminarily certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 and conditionally certifying an FLSA collective for settlement purposes under 29 U.S.C. §201., *et seq.*; (2) preliminarily approving the Parties' Settlement Agreement and all terms therein; (3) preliminarily appointing Plaintiffs as Class Representatives for the Class Members and Sommers Schwartz, P.C. as Class Counsel; (4) approving the form and content of the Parties' proposed Notice of Settlement; (5) approving the appointment of Settlement Administrator; and (6) scheduling a hearing on the final approval of the Settlement.


Date: July 15, 2025                                   Respectfully Submitted,

*/s/ Kevin J. Stoops*_____
Kevin J. Stoops (P64371)
Alana Karbal (P82908)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for the Plaintiffs and the Putative Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2025, I electronically filed the foregoing document with

the Clerk of the Court using the ECF system which will automatically send notice of such filings

to all counsel of record.

_/s/ Kevin J. Stoops_
Kevin J. Stoops