## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**MAKAYLA HARRIS, COLLEEN LEWIN,
TIFFANY WILLIAMS, DANIELLE
COLWILL MAUCH, KRISTOPHER
FLAGG, MATTHEW BERG, ALICIA
JENKINS, ANISSA BATES, BRITTANY
YOUNG, KIMBERLY PITNEY, DAWN
BADGER, PAULA KEMP, RHONDA
DAVIS, TIFFANY PATTERSON,
BRITTNEY CHRISTIAN, PHANTHASIA
KING, TAURI SCHULER-BONNER,
AMELIA KURTZ, MATTHEW PAVEY,
RACHEL DUBOSE, LEXUS RANSOM,
CLAUDINE MIUDO, RICHARD DEAN,
STEPHANIE ST. GEORGE** and **SASHA
RANSEY** individually, and on behalf of others
similarly situated,

Case No.: 1:22-cv-00437-RM-JPO

Hon.: Raymond P. Moore

Mag.: James P. O'Hara

      Plaintiffs,

vs.

**STARTEK USA, INC.,** a corporation,

      Defendant.

---

### PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT

Plaintiffs, Makayla Harris, Colleen Lewin, Tiffany Williams, Danielle Colwill Mauch,

Kristopher Flagg, Matthew Berg, Alicia Jenkins, Anissa Bates, Brittany Young, Kimberly Pitney,

Sasha Ransey, Dawn Badger, Paula Kemp, Rhonda Davis, Tiffany Patterson, Brittney Christian,

Phanthasia King, Tauri Schuler-Bonner, Amelia Kurtz, Matthew Pavey, Rachel Dubose, Lexus

Ransom, Claudine Miudo, Richard Dean, Stephanie St. George, and Sasha Ransey ("Plaintiffs"),

respectfully request entry of an order (1) certifying a class for settlement purposes under the

Federal Rules of Civil Procedure, Rule 23 (e.g., "Rule 23") and certifying a FLSA collective for

settlement purposes under 29 U.S.C. § 216(b) (as defined in the Parties' Joint Stipulation of Class

Action Settlement (hereinafter "Settlement Agreement")); (2) finally approving the Parties' Settlement Agreement; (3) appointing Named Plaintiffs as Class Representatives for the Class/Collective and Plaintiffs' counsel as Class Counsel; and (4) dismissing the action with prejudice.

Plaintiffs respectfully submit good cause exists for granting the Motion for the reasons set forth in the concurrently filed documents. Defendant's counsel has reviewed the documents being filed in support of this Motion and does not oppose the relief requested therein.

This Motion is based upon the Memorandum of Points and Authorities and other documents filed herewith, including the Settlement Agreement, the Declaration of Class Counsel, the [Proposed] Order, and the other pleadings and records on file in this action, and the presentations of counsel and such oral or documentary evidence as may be presented at the hearing on this unopposed Motion.

Date: October 21, 2025

Respectfully Submitted,

*/s/ Kevin J. Stoops*_____
Kevin J. Stoops (P64371)
Alana Karbal (P82908)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for the Plaintiffs and the Putative Class Members*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2025, I electronically filed the foregoing document

with the Clerk of the Court using the ECF system which will automatically send notice of such

filings to all counsel of record.

*/s/ Kevin J. Stoops*
Kevin J. Stoops

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**MAKAYLA HARRIS, COLLEEN LEWIN, TIFFANY WILLIAMS, DANIELLE COLWILL MAUCH, KRISTOPHER FLAGG, MATTHEW BERG, ALICIA JENKINS, ANISSA BATES, BRITTANY YOUNG, KIMBERLY PITNEY, DAWN BADGER, PAULA KEMP, RHONDA DAVIS, TIFFANY PATTERSON, BRITTNEY CHRISTIAN, PHANTHASIA KING, TAURI SCHULER-BONNER, AMELIA KURTZ, MATTHEW PAVEY, RACHEL DUBOSE, LEXUS RANSOM, CLAUDINE MIUDO, RICHARD DEAN, STEPHANIE ST. GEORGE** and **SASHA RANSEY** individually, and on behalf of others similarly situated,

Plaintiffs,

vs.

**STARTEK USA, INC.,** a corporation,

Defendant.

Case No.: 1:22-cv-00437-RM-JPO

Hon.: Raymond P. Moore

Mag.: James P. O'Hara

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL <u>APPROVAL OF SETTLEMENT</u>

## TABLE OF CONTENTS

I.    **INTRODUCTION**..................................................................................................1

II.   **PROCEDURAL HISTORY OF THE CASE** .............................................2

    A.    THE PROCEEDINGS, PLEADINGS, AND PARTIES .........................2

    B.    SUMMARY OF DISCOVERY CONDUCTED PRIOR TO
        SETTLEMENT.......................................................................................6

    C.    DEFENDANT'S ESTIMATED EXPOSURE.........................................8

    D.    THE SETTLEMENT AGREEMENT ..................................................10

        1.   The Class Members........................................................................10

        2.   The Monetary Payments ...............................................................11

        3.   The Release ....................................................................................12

        4.   Notice, Request for Exclusion, Objection Periods.........................13

    E.    PRELIMINARY APPROVAL AND ISSUANCE OF SETTLEMENT
        NOTICE................................................................................................14

III.  **LEGAL ANALYSIS** ............................................................................15

    A.   THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL .....................15

      1.   Standards for Final Approval of Settlement ............................................16

        i.    The Proposed Settlement was Fairly and Honestly Negotiated......................16

        ii.   Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome
           of this Action in Doubt ..................................................................................18

        iii.  The Value of Immediate Recover Outweighs the Possibility of Any
           Future Relief ...................................................................................................19

        iv.   Counsel Believe the Settlement is Fair and Reasonable ................................21

    B.   THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a) AND
      (b) FOR PURPOSES OF FINAL CERTIFICATION ......................................................22

      1.   Rule 23(a)(1)'s Numerosity Requirement is Satisfied..............................22

2.  Rule 23(a)(2)'s Commonality Requirement is Satisfied................................................23

3.  Rule 23(a)(3)'s Typicality Requirement is Satisfied ...................................................24

4.  Rule 23(a)(4)'s Adequacy Requirement is Satisfied ...................................................25

5.  Rule 23(b)(3) is Satisfied ............................................................................................26

C.  THE STANDARD FOR FLSA SETTLEMENT APPROVAL.........................................27

1.  The Settlement Warrants Court Approval Under the FLSA........................................28

D.  THE BEST PRACTICABLE NOTICE OF SETTLEMENT HAS BEEN
PROVIDED TO THE CLASS.............................................................................................30

IV.  **CONCLUSION** ................................................................................................................31

# INDEX OF AUTHORITIES

## Cases

*Adamson v. Bowen*,
  855 F.2d 668 (10th Cir.1988) ............................................................................... 24

*Alvarado Partners, L.P. v. Mehta*,
  723 F. Supp. 540   (D. Colo. 1989) ................................................................. 17, 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 26, 27

*Ashley v. Reg'l Transp. Dist.*,
  2008 WL 384579 (D. Colo. Feb. 11, 2008) ........................................................... 16

*A-W Land Co., LLC v. Anadarko E&P Co. LP*,
  2012 U.S. Dist. LEXIS 139241 (D. Colo. Sept. 26, 2012) ...................................... 23

*Bass v. PJCOMN Acquisition Corp.*,
  2011 U.S. Dist. LEXIS 58352 (D. Colo. June 1, 2011) .......................................... 23

*Brooklyn Savings Bank v. O'Neil*,
  324 U.S. 697 (1945) ..................................................................................... 28, 29

*DeJulius v. New England  Health Care Emps. Pension Fund*,
  429 F.3d 935 (10th Cir. 2005) ............................................................................ 30

*DG v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) .......................................................................... 23

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ......................................................................... 26

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .......................................................................................... 30

*Gianzero v. Wal-Mart Stores, Inc.*,
  2010 U.S. Dist. LEXIS 38426 (D. Colo. Mar. 29, 2010) ........................................ 23

*Gottlieb v. Wiles*,
  11 F.3d 1004 (10th Cir. 1993) ............................................................................ 19

*Granada Inv., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ............................................................................ 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 25, 27

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir.1964) ............................................................................... 22

*Hochschuler* v. *G.D. Searle* & *Co.*,
  82 F.R.D. 339 (N.D. Ill. 1978) ........................................................................... 26

*In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ................................................................................. 22

*In re Integra Realty Res., Inc.*,
  262 F.3d 1089 (10th Cir. 2001) .......................................................................... 30

*In re Integra Realty Res., Inc.*,
  354 F.3d 1246 (10th Cir. 2004) .......................................................................... 16

*In re Qwest Savings and Investment Plan ERISA Litigation*,
  No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693(D. Colo. Sept. 24, 2004) ................... 24

*In re Sugar Industry Antitrust Litig.*,

73 F.R.D. 322 (E.D. Pa. 1976) ............................................................. 26
*In re Telectronics Pacing Sys.*,
172 F.R.D. 271 (S.D. Ohio 1997)......................................................... 26
*IUE-CWA, v General Motors Corp.*,
238 F.R.D. 583 (E.D. Mich 2006) ......................................................... 19
*Latham v. Branch Banking & Trust Co.*,
2014 U.S. Dist. LEXIS 16490 (M.D.N.C. Jan. 14, 2014) ...................... 28
*Lucas v Kmart Corporation*,
234 F.R.D 695 (D. Colo. 2006). .............................................. 17, 21, 30
*Lynn's Food Stores, Inc. v. United States U.S. Dep't of Labor*,
679 F.2d 1350 (11th Cir. 1982) .................................................... 27, 28
*Maez v. Springs Auto. Group, LLC*,
268 F.R.D. 391 (D. Colo. 2010) .................................................... 23, 25
*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................... 19
*Milonas v. Williams*,
691 F.2d 931 (10th Cir. 1982) ............................................................. 23
*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................ 30
*Oppenlander v. Standard Oil Co. (Indiana)*,
64 F.R.D. 597 (D. Colo. 1974) ............................................................ 20
*Phillips Petrol. Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................ 30
*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
313 F.R.D. 117 (D. Colo. 2016) .................................................... 15, 20
*Ressler v. Jacobson*,
822 F. Supp. 1551 (M.D. Fla. 1992)..................................................... 17
*Rhodes v. Olson Associates, P.C.*,
308 F.R.D. 664 (D. Colo. 2015) .......................................................... 21
*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) .................................................... 16, 25
*San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*,
188 F.R.D. 433 (W.D. Tex. 1999)......................................................... 17
*Schwartz v. Celestial Seasonings*,
178 F.R.D. 545 (D. Colo. 1998) .......................................................... 25
*Thompson v. Qwest Corporation*,
2018 WL 2183988 (D. Col. May 11, 2018) .......................................... 28
*Tuten v. United Airlines, Inc.*,
41 F. Supp. 3d 1003 (D. Colo. 2014) ............................................ 16, 18
*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)......................................................................... 23
*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
2006 WL 2642528 (N.D. Cal. Sept. 14, 2006)....................................... 22
*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D. Colo. 1997) .............................................. 17, 18, 21
*Wingrove v. D.A. Techs., Inc.*,

2011 U.S. Dist. LEXIS 153759 (N.D. Ga. Feb. 11, 2011) .......................................................... 29

## **Statutes**

29 U.S.C. § 201 .................................................................................................................... 2, 13
29 U.S.C. § 202 ........................................................................................................................ 28
29 U.S.C. § 216(b) ..................................................................................................... 3, 4, 10, 27
Ark. Code Ann. §§ 11-4-201 ...................................................................................................... 2
O.R.C. §§ 4111 ........................................................................................................................... 2
Ohio Constitution Art. II, § 34a ................................................................................................. 2
Va. Code Ann. §§ 40.1-28 .......................................................................................................... 2

## **Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 22
Federal Rule of Civil Procedure 23 ....................................................................... 10, 11, 12, 28
Federal Rule of Civil Procedure 23(e) ............................................................................... 28, 30
Rule 23(a)(2) ...................................................................................................................... 23, 24
Rule 23(a)(3) ............................................................................................................................. 24
Rule 23(a)(4) ............................................................................................................................. 25
Rule 23(b)(3) ............................................................................................................................. 26

# I.  **INTRODUCTION**

This is a FLSA and state law wage-and-hour hybrid collective/class action. Plaintiffs settled this litigation on behalf of approximately 22,000 hourly Customer Service Representatives ("CSRs") of Defendant Startek USA, Inc. (hereinafter "Defendant").

Without waiving any arguments regarding the merits of the claims, or the suitability of this case for class or collective treatment, Defendant has agreed to pay $2,500,000 (the Gross Settlement Fund) to resolve all claims asserted in Plaintiffs' First Amended Complaint on a class-wide basis. Plaintiffs, without opposition from Defendant, seeks final court approval of the Parties' Joint Stipulation of Class Action Settlement Agreement (hereinafter "Settlement Agreement"). (Exh. A).

This is a common fund settlement, with no claims process. There will be no claim forms, and those class members who do not request exclusion from the Settlement will automatically receive settlement checks upon final approval of the Settlement Agreement.

Following the Court's July 18, 2025 Preliminary Approval Order, the settlement administrator, Atticus Administration, LLC, mailed the court approved notice to 21,881 class members. (Exh. C, Bridley Decl. at ¶ 6). The exclusion and objection period ended on October 13, 2025. **Zero objections** were received by the objection deadline; and none of have been received through the date of this filing. (*Id. at* ¶ 12). Further, only 3 exclusion forms were received from the entire 21,881 member class. (*Id. at* ¶ 11). Needless to say, class member reaction to the Settlement has been overwhelmingly positive.

Because of this reason, and because the Settlement is fair, reasonable, and an adequate resolution of this litigation, the Parties respectfully request that the Court approve the Settlement and enter an Order and Judgement Granting Plaintiffs' Motion for Final Approval of Settlement, and Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, Settlement Administration Fees,

and Class Representative Service Awards. (A copy of the Proposed Order is attached as Exhibit D).

## II.    PROCEDURAL HISTORY OF THE CASE

### A.    THE PROCEEDINGS, PLEADINGS AND PARTIES

This action was filed on February 18, 2022, in the United States District Court for the District of Colorado, asserting the following claims:

| | |
|---|---|
| Count I: | Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* – Failure to Pay Overtime (Collective Action) |
| Count II: | Violations of the Arkansas Minimum Wage Act, Ark. Code Ann. §§ 11-4-201, *et seq.*, Ark. Code R. § 10-14.108 (Rule 23 Arkansas Class Action) |
| Count III: | Violations of the  Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq.* and Ohio Constitution Art. II, § 34a (Rule 23 Ohio Class Action) |
| Count IV: | Violations of the Virginia Minimum Wage Act and the Virginia Overtime Wage Act, Va. Code Ann. §§ 40.1-28, *et seq.* and 40.1-29.2, *et seq.*   (Rule 23 Virginia Class Action) |
| Count V: | Nationwide Breach of Contract (Rule 23 Class Action) |
| Count VI: | Nationwide Unjust Enrichment (Rule 23 Class Action) |

[ECF No. 1].

On March 18, 2022, Defendant filed its Answer, which denied all of Plaintiff's allegations. Further, Defendant asserted 13 affirmative and other defenses, including, among others: 1) that Plaintiffs and the putative class members were paid for all work performed; 2) that Plaintiffs and the putative class members are not entitled to liquidated damages or an extended (third year) statute of limitations because Defendant's actions were not willful and it acted in good faith; and 3) that the alleged off-the-clock work was not compensable under the *de minimis* doctrine. [ECF No. 12].

On April 11, 2022, Plaintiffs filed their Pre-Discovery Motion for Conditional Collective

Certification, asking the Court to conditionally certify a collective of customer service representatives. [ECF No. 16]. On May 23, 2022, Defendant responded to Plaintiffs' Motion [ECF No. 34] and on June 6, 2022, the briefing on Plaintiffs' Motion concluded with Plaintiffs' Reply. [ECF No. 35].

On March 31, 2023, then-Magistrate Judge Crews issued his Report and Recommendation that Plaintiffs' Motion for Conditional Certification be granted in part and denied in part, with the following collective being conditionally certified for purposes of Plaintiffs' FLSA claim(s): All current and former hourly customer service representatives (CSRs) who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment. [ECF No. 49].

On April 14, 2023, Defendant filed its Objections to the Magistrate Judge's Recommendation, and on April 26, 2023 [ECF No. 50], Plaintiffs filed their Response to Defendant's Objections. [ECF No. 51].

On February 21, 2024, this Court, *inter alia*: (1) rejected in part and sustained in part Defendant's Objections; (2) adopted in part and rejected in part Magistrate Judge Crews' Report and Recommendation; (3) granted Plaintiffs' Motion for Conditional Certification; (4) conditionally certified this action as a collective action pursuant to 29 U.S.C. § 216(b); and (5) ordered Defendant to provide Plaintiffs' counsel the names, physical addresses, email addresses, and telephone numbers for all putative members of the FLSA collective in an electronically readable and importable format. The Court defined the collective action members as follows: "All current and former hourly call center workers, including but not limited to: Customer Service Representatives, Engagement Specialists, and Technical Support Representatives (collectively, "Customer Service Representatives") who work or have worked for Startek USA, Inc. at any time

3

from February 20, 2021, to the present." (*Id.*). [ECF No. 54].

On February 23, 2024, Plaintiffs filed a Motion for Equitable Tolling and the briefing on Plaintiffs' Motion concluded with the filing of Defendant's Sur-Reply on April 5, 2024. [ECF No. 55].

On April 10, 2024, the Court granted Plaintiffs' Motion for Equitable Tolling and redefined the collective action members as follows: All current and former hourly call center workers, including but not limited to: Customer Service Representatives, Engagement Specialists, and Technical Support Representatives (collectively, "Customer Service Representatives") who work or have worked for Startek USA, Inc. at any time from June 8, 2019 to the present. [ECF No. 70].

On April 24, 2024, Defendant provided Plaintiffs' counsel the names, physical addresses, email addresses, and telephone numbers for 20,012 putative members of the FLSA collective. (Exh. B, Stoops Decl. at ¶ 22). Following the Court's orders granting two motions to modify notice, Notice was issued on May 3, 2024, to the putative FLSA collective members identified on Defendant's April 24th spreadsheet. (*Id.* at ¶ 23).

Starting on or around May 15, 2024, Plaintiffs' counsel and the Notice Administrator received calls and/or correspondence from individuals to whom notice had not been sent but who believed they fit the collective definition and were eligible to join this case. (*Id.* at ¶ 24). On June 18, 2024, Defendant's counsel advised Plaintiffs' counsel that Defendant "inadvertently missed a small group of individuals that worked as CSRs but were then promoted to supervisor positions. These individuals should have been included in the original list for at least their limited time as non-exempt CSRs." Counsel's correspondence attached a supplemental class list of 184 individuals and indicated that, "[t]o remedy this issue, we are willing to agree to the individuals on this list receiving notice per the Court's Order and having 60 days to opt-in." (*Id.* at ¶ 25).

4

On June 20, 2024, the Parties filed a Joint Motion to Issue Notice to the 184 individuals. [ECF No. 87]. The same day, the Court granted the Parties' Motion. Notice was issued to the 184 putative plaintiffs on June 24, 2024. [ECF No. 88].

On July 25, 2024, the Parties filed a Joint Motion to Stay Case and Toll the Statute of Limitations for Rule 23 Class Members. The purpose of the Motion was to stay all case deadlines to allow the Parties to prepare for and participate in mediation and to toll the limitations period for the claims of all would-be Rule 23 class members of Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Pennsylvania, South Carolina, and West Virginia. [ECF No. 94].

On August 24, 2024, the second Opt-in Period closed. In total, there are 4,384 FLSA opt-ins. (Exh. B, Stoops Decl. at ¶ 29).

Over the next few months, the Parties conducted numerous meet and confer conferences regarding the viability of Plaintiff's claims and the possibility of exploring resolution. (*Id.* at ¶ 30). Ultimately, the Parties agreed to attend mediation and exchange voluntary discovery including class-wide pay and time records to assist with that mediation. (*Id.* at ¶ 31).

On January 16, 2025, the Parties attended a private mediation with well-respected wage and hour mediator Michael Russell of Nashville, Tennessee. (*Id.* at ¶ 32). After a full day mediation, the Parties were not able to reach an agreement. (*Id.* at ¶ 33).

On January 27, 2025, Plaintiffs filed their First Amended Complaint adding claims arising under the wage and hour laws of the states of: Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Pennsylvania, South Carolina and West Virginia. [ECF No. 105]. Over the next few weeks the Parties held numerous meet and confer conferences to discuss the scope of representative discovery and to prepare an amended scheduling order. (Exh. B, Stoops Decl. at ¶ 35).

From February through June 2025 the Parties engaged in negotiations – direct and with the assistance of Mediator Russell. The Parties negotiations consisted of dozens of emails, telephone calls and meetings. (*Id.* at ¶ 36). The Parties ultimately reached a settlement in principal on June 10, 2025. (*Id.* at ¶ 37). Over the next few weeks, the Parties negotiated and finalized the Settlement Agreement, which is now before the Court for preliminary approval. (*Id.* at ¶ 38). At all times, the Parties' settlement negotiations have been non-collusive, adversarial, at arm's length, and with the assistance of a well-respected third-party mediator. (*Id.* at ¶ 39).

### B.    SUMMARY OF DISCOVERY CONDUCTED PRIOR TO SETTLEMENT

Plaintiffs' Counsel based the Complaint upon substantial pre-filing research, both factual and legal. With respect to discovery, Plaintiffs' Counsel was responsible for reviewing and analyzing the following materials, that consisted of multiple documents and substantial electronic data:

a.    Information pertaining to the number of Class Members employed by Defendant during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; hours worked per week; total weeks worked; total shifts worked; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

b.    Data modeling and related statistics identifying the alleged off-the-clock work performed by Plaintiff and the Class Members;

c.    Voluminous time and pay records for Plaintiffs and the Class Members;

d.    Training and Policy materials; and

e.    Offer letter and other employment documents related to Plaintiffs.

(Exh. B, Stoops Decl. at ¶ 42).

Throughout the litigation, and in connection with the mediation process, Defendant asserted numerous legal and factual defenses to Plaintiffs' claims and class certification efforts, including, among others, that:

a. A large portion of the putative Class Members were subject to binding arbitration agreements and class action waivers.

b. The time Plaintiffs and the Class Members sought compensation for was not compensable under the FLSA or any state wage and hour law.

c. The time Plaintiffs and the Class Members sought compensation for was not compensable because it was *de minimis*.

d. Defendant maintains written employment policies that require employees to report all hours worked and prohibit employees from performing any off-the-clock work.

e. Defendant instructs and requires employees to report any suspected violation of Defendant's policies prohibiting off-the-clock work.

f. Defendant will tender Class Members to testify that they did not work off-the-clock and/or that any off-the-clock work alleged by Plaintiffs is greatly exaggerated.

g. The Class Members engaged in personal, non-compensable activities at the beginning of their shifts.

h. Plaintiffs' allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks she describes.

i. The putative Class Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing any alleged off-the-clock work.

j. Plaintiffs and the Class Members were paid for all worked performed.

k. The putative Class Members will not satisfy the requirements for certification under Rule 23 or the Section 216(b) of the FLSA.

l. Plaintiffs will not be able to establish that Defendant's alleged violations, if any, were willful.

m. Plaintiffs and the putative Class Members will not be able to recover liquidated damages.

(*Id.* at ¶ 48).

The existence of Defendant's factual and legal arguments weighed on Plaintiffs' decision to settle the case. While Class Counsel understandably takes issue with the viability of some of

these defenses, the risks associated with the continued litigation of Plaintiffs' wage claims simply cannot be disregarded in measuring the reasonableness of the settlement. Specifically, settling this case now saves Plaintiffs from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation. Should the parties have continued to litigate the case, Plaintiff would have been no less than 6 to 12 months of additional formal discovery (individual class member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by Rule 23 certification motion practice on Plaintiffs' various state law claims, numerous dispositive motions, and eventually one or more trials. It is very likely that this litigation would extend for another two to three years and cost the Plaintiff $500,000 to $1,000,000 (or more) in attorneys' fees and expenses. (*Id.* at ¶ 49).

### C.    DEFENDANT'S ESTIMATED EXPOSURE

To evaluate and negotiate settlement and take part in mediation, Plaintiffs' Counsel prepared a time consuming and complicated damage analysis of all claims at issue in this case. (Exh. B, Stoops Decl. at ¶ 50).

The first objective of the analysis was to identify the class metrics. In connection with that task, the following metrics were ascertained based on timekeeping and pay records for the relevant statute of limitations periods through the time of mediation:

- 4,384 FLSA opt-ins;

- 8,668 Rule 23 State Law Class Members;

- 10,742 Breach of Contract/Unjust Enrichment Class Members;

- Average hourly rate of $13.01;

- 694,069 total workweeks; and

- Only 20.38% of the workweeks had hours worked equal to or exceeding 39 hours.

(*Id.* at ¶ 51).

Next the analysis identified the possible damages that could be recovered for each of the claims in the litigation (with the damages extrapolated through the date of mediation, January 16, 2025). (*Id.* at ¶ 52). Having handled numerous call center cases across the country and having reviewed settlements from many other call center cases, the typical settlement in these cases reflect payments of four to six minutes of work per shift. (*Id.* at ¶ 53).

Based on the damage analysis conducted by Plaintiffs' Counsel and upon applying the typical recovery window of four to six minutes per shift – *and* with inclusion of FLSA liquidated damages *and* gap time damages in weeks where the FLSA Opt-Ins were not entitled to overtime compensation – the range of recovery for the 4,384 FLSA Opt-Ins would fall between $780,620 to $1,170,930. (*Id.* at ¶ 54).

Based on the damage analysis conducted by Plaintiffs' Counsel and upon applying the typical recovery window of four to six minutes per shift – *and* with inclusion of state specific damages *and* gap time damages in weeks where the Rule 23 State Law Class Members were not entitled to overtime compensation – the range of recovery for the 8,668 Rule 23 State Law Class Members would fall between $1,707,084 to $2,560,626. (*Id.* at ¶ 55).

Throughout the Parties' settlement negotiations Defendant placed no settlement value on the claims of the Rule 23 Breach of Contract/Unjust Enrichment Class Members because, among other things: a) the Class Members had not opted in to the FLSA collective and thus do not have viable FLSA claims; b) the Class Members did not work in a state with viable wage and hour protections; and c) the Class Members will not be able to certify nationwide breach of contract and unjust enrichment claims meaning that their claims will be dismissed and they will not be entitled

to any recovery. (*Id.* at ¶ 56). Based on these factors the Parties negotiated a pool of $163,590 to be payable to the Rule 23 Breach of Contract/Unjust Enrichment Class Members in the amount of $15 per person. (*Id.* at ¶ 57).

The $2,500,000 Gross Settlement Fund equates to approximately 66.99% to 100.4% of the $2,487,704 to $3,731,556 of Defendant's maximum alleged damage exposure (based on the 4 to 6 minutes per shift that is recovered in the vast majority of call center settlements). (*Id.* at ¶ 58). Consequently, there can be no question that the settlement amount is substantial, completely reasonable, and marks a fair compromise. (*Id.* at ¶ 59).

### D.    THE SETTLEMENT AGREEMENT

The Settlement Agreement's material terms are briefly summarized below, but the full Settlement Agreement is attached hereto as Exhibit A.

#### 1.    <u>The Class Members.</u>

For purposes of settlement only, the parties have agreed to certification of the following Class and Collective pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) of the following individuals:

- ➢ "FLSA Class Member" means the 4,384 individuals who opted in to the Action by filing written consent to join forms.

- ➢ "Rule 23 State Law Class Member" means the approximately 8,668 individuals (as identified by Defendant in its mediation production) who worked for Defendant in the following states during the Class Period but did not opt in to the Action: Arkansas, Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia.

- ➢ "Rule 23 Breach of Contract Class Member" means the approximately 10,906 individuals (as identified by Defendant in its mediation production) who did not opt in to the action and who worked for Defendant during the Class Period in states other than the following: Arkansas, Colorado, Illinois, Kentucky, Missouri, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia.

(Exh. A, ¶¶ 6, 25, 26).

Pursuant to the terms of the Settlement Agreement, if the settlement does not become final and effective, class certification should immediately be revoked without prejudice and the settlement class should be decertified.  (*Id*. at ¶ 31).

## 2. **The Monetary Payments.**

Defendant has agreed to pay a total Gross Settlement Fund of $2,500,000 (in addition to Defendant's employer-side tax obligations arising out of the Settlement). (Exh. A, ¶ 21). If approved by the Court, the following amounts will be deducted from the Gross Settlement Fund: $833,333.33 for Class Counsel's attorneys' fees (33-1/3% of Global Settlement Fund); up to $55,000 for litigation expenses; up to $81,000 for settlement administration fees; and cumulative service awards in the amount of $51,000 for the Named Plaintiffs. (*Id.* at ¶ 45). The remaining balance of the settlement fund, the "Net Settlement Amount," will be distributed to the Settlement Class Members as follows:

a. <u>Rule 23 Breach of Contract Class Member Payments:</u> $163,590 of the Net Settlement Amount will allocated to the Rule 23 Breach of Contract Class Member Payment pool and will be used to satisfy the claims of the approximately 10,906 Rule 23 Breach of Contract Class Members. Each Rule 23 Breach of Contract Class Member will be issued an Individual Settlement Amount in the amount of $15. (*Id.* at ¶ 45(b)).

b. <u>FLSA Class Member Payments:</u> After deduction of the $163,590 Rule 23 Breach of Contract Class Member Payment pool from the Net Settlement Amount, 50% of the remaining balance will be allocated to the FLSA Class Member Payment pool. The Settlement Administrator will calculate the total amount that each FLSA Class Member will receive. The Settlement Administrator will divide the FLSA Class Member Payment pool by the total number of workweeks FLSA Class Members were employed during the Class Period ("Workweek Amount"). The Settlement Administrator will multiply the Workweek Amount by the total number of workweeks that each FLSA Class Member was employed during the Class Period to arrive at an estimated Individual Settlement Amount. (*Id.*).

c. <u>Rule 23 State Law Class Member Payments:</u> After deduction of the $163,590 Rule 23 Breach of Contract Class Member Payment pool from the Net Settlement Amount, 50% of the remaining balance will be allocated to the Rule 23 State Law Class Member Payment pool. The Settlement Administrator will calculate the total amount that each Rule 23 State Law Class Member will receive. The Settlement Administrator will

11

divide the Rule 23 State Law Class Member Payment pool by the total number of workweeks Rule 23 State Law Class Members were employed during the Class Period ("Workweek Amount"). The Settlement Administrator will multiply the Workweek Amount by the total number of workweeks that each Rule 23 State Law Class Member was employed during the Class Period to arrive at an estimated Individual Settlement Amount. (*Id.* at ¶ 4).

d.  Each FLSA Settlement Payment Check shall be affixed with the following endorsement:

> By cashing this Settlement Payment check, I am consenting to join the FLSA Collective and fully, finally, and forever releasing, settling, compromising, relinquishing, and discharging the Released Parties from all claims, rights, demands, liabilities, and causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Action or could have been alleged in the Action based on the facts and claims asserted in the operative complaint while I worked for Defendant for the period of February 18, 2019 through [the Effective Date]. The claims released by me include all claims for unpaid wages under the federal Fair Labor Standards Act ("FLSA"), and applicable state and municipal law (including common law, statutes, ordinances, and regulations). (*Id.* at ¶ 45(c)).

e.  Individual Settlement Amounts will be allocated as follows: 50% as wages subject to withholding under an IRS Form W-2; and 50% payable as liquidated damages under an IRS Form 1099, with nothing withheld from such payments. (*Id.* at ¶ 45(a)).

f.  Any checks issued to Settlement Class Members will remain valid and negotiable for one hundred and eighty (180) days from the date of their issuance. After that time, any such uncashed check proceeds will be returned to Defendant. (*Id.*).

g.  If the actual number of Rule 23 State Law Class Members or Rule 23 Breach of Contract Class Members exceeds the amount of Class Members identified by Defendant at settlement (8,668 Rule 23 State Law Class Members; 10,906 Rule 23 Breach of Contract Class Members) by more than 10%, Plaintiff shall have the sole and absolute discretion to terminate the Settlement unless Defendant agrees to increase the Gross Settlement Amount proportionate to the number of additional class members in excess of the above listed class member amounts based on the additional aggregate work weeks during the Class Period of the original 8,668 Rule 23 State Law Class Members and 10,906 Rule 23 Breach of Contract Class Members. (*Id.* at ¶ 46).

### 3.  The Release.

The Settlement Agreement includes a release of:

Defendant, and its affiliates and related entities, including, without limitation, its parents and subsidiaries, owners, predecessors, successors, divisions, joint ventures

and assigns, clients, and each of their past, present and/or future direct and/or indirect directors, officers, employees, partners, members, investors, principals, agents, insurers, co-insurers, re-insurers, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, attorneys, and personal or legal representatives. ("Released Parties"). (Exh. A, ¶ 22).

The Released Parties are released from:

[A]ll claims for unpaid wages that have been alleged or that could have been alleged in the Action including all of the following claims for relief: (a) that Defendant failed to pay and/or properly calculate all wages due, straight time, overtime, double-time, premium pay, minimum wages, and all other forms of wages; (b) that Defendant failed to maintain required records; (c) that Defendant owes other monies or penalties under the FLSA and any other state wage and hour laws (including without limitation the state wage laws identified in Plaintiffs' First Amended Complaint); and (d) that Defendant is responsible for the payment of damages, penalties, interest, and other amounts recoverable under said causes of action, including without limitation the following claims based on or reasonably relating to claims asserted or alleged in the action: claims for unpaid wages (including claims for regular wages, overtime, regular rate calculations, gap time, off-the-clock or unpaid time, and breaks) under the Fair Labor Standards Act, 29 U.S.C. §201, et seq., state wage and hour laws, and state common law theories, including without limitation breach of contract and unjust enrichment. The Released Claims also include all claims that Plaintiff and the Settlement Class Members may have against the Released Parties relating to (i) the payment and allocation of attorneys' fees and costs to Class Counsel pursuant to this Agreement, and (ii) the payment of the Class Representative Service Awards pursuant to this Agreement. The period of the Release shall extend commensurate with that of the Class Period, as defined above. (*Id.* at ¶ 21)
.
Plaintiffs will be subject to a general release. (*Id.* at ¶ 41).

The releases in the Settlement Agreement run from February 18, 2019, through March 17, 2025. (*Id.* at ¶ 7).

### 4.  <u>Notice, Request for Exclusion, Objection Periods.</u>

This is a common fund settlement and every participating class member (i.e., those who do not timely opt-out) will automatically be sent checks containing their Individual Settlement Amount. (Exh. A, ¶ 45(a)).

The Settlement Administrator is required to provide Notice of the Settlement to the Class Members by U.S. Mail. (*Id.* ¶ 44(a)). The Notice of Settlement, attached at Exhibit A to the

Settlement Agreement, has been drafted to efficiently yet comprehensively describe the terms of the Settlement. The Settlement Administrator is required to issue the Notice of Settlement no later than 14 days after the Court's Preliminary Approval Order. (*Id.*).

Class members who want to be excluded from the Settlement must mail a written Request for Exclusion form to the Settlement Administrator no later than 45 days after the original mailing of the Class Notice. (*Id.* at ¶ 45(f)) Class Members will also have 45 days from the mailing of the Notice of Settlement to object to the Settlement, and the Class Notice provides details on these objection procedures. (*Id.* at ¶ 45(g)).

### E.    PRELIMINARY APPROVAL AND ISSUANCE OF SETTLEMENT NOTICE

On July 15, 2025 Plaintiffs filed their Motion for Preliminary Approval of Settlement. [ECF No. 122]. The Court granted that Motion and entered its Preliminary Approval Order on July 18, 2025. [ECF No. 124].

The Parties implemented the instructions of the Preliminary Approval Order in this regard. On August 15, 2025, the settlement administrator, Atticus Administration, LLC, mailed the court approved notice to 21,881 class members. (Exh. C, Bridley Decl. at ¶ 6).

The Notice and the exclusion forms contained detailed information about the lawsuit, including the total amount of the settlement, the method by which the settlement funds would be allocated among the Class Members, and procedures for opting-out of or objecting to the settlement. (*Id.* at Exhibit A). The Notice also provided contact information for Class Counsel and the Settlement Administrator. *Id.*

The Settlement Administrator followed accepted best practices to ensure that the Notice reached as many Class Members as feasible. The Settlement Administrator disseminated the Court-approved Notice to all Class Members by first class mail, using the National Change of

Address ("NCOA") database to verify the accuracy of all addresses prior to sending the Notices. (*Id.* at ¶ 7). The Settlement Administrator also ran traces on the addresses of any returned Notices to again search for an updated address. (*Id.*). The Settlement Administrator also maintained a website and toll-free telephone number and a website to provide Class Members with additional information. (*Id.* at ¶ 8-10).

The exclusion and objection period ended on October 13, 2025. **Zero objections** were received by the objection deadline; and none of have been received through the date of this filing. (*Id. at* ¶ 12). Further, only 3 exclusion forms were received from the entire 21,881 member class. (*Id. at* ¶ 11). Needless to say, class member reaction to the Settlement has been overwhelmingly positive.

## III. <u>LEGAL ANALYSIS</u>

### A. <u>THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL</u>

The Parties' Settlement Agreement is a hybrid agreement, resolving both the FLSA and state law wage claims, which form has been previously approved in this District:

> While courts across the country have reached differing conclusions as to whether a Rule 23 state law wage claim may proceed in the same action as an FLSA collective wage claim, the most recent cases arising in this District tend toward approving such arrangements. This case is at the settlement stage and both sides have agreed to treat the settlement as a hybrid action. The putative Class Members are identical for the FLSA claims and the state [Minimum Wage Order] claims. The putative Class Members in this case are low wage employees of a restaurant, many of whom are not United States citizens. With the vehicle of class notice, most would never know of the alleged wage violations and would have never brought overtime issues to the attention of the employer. With ample current precedent to support proceeding with a hybrid class action, the court will allow such a settlement class here.

*Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016).

Many of these same reasons support the hybrid settlement as proposed by the Parties in this action, and for the reasons expressed below, the Settlement Agreement should be approved to ensure that the maximum number of Class Members obtain the relief sought.

  **1.**   __Standard for Final Approval of Class Settlements__

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

(1)  whether the proposed settlement was fairly and honestly negotiated;

(2)  whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)  whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)  the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

In consideration of these factors, approval of the Settlement Agreement is warranted. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

    *i.*   ***The proposed settlement was fairly and honestly negotiated.***

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement

negotiations. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997) (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546  (D. Colo. 1989)).

"The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."  *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).  However, the "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."  *San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. The Parties engaged in substantial formal discovery regarding the merits of the claims and Defendant's defenses. Moreover, Class Counsel prepared a detailed damage analysis based on Defendant's class-wide time and pay records. Finally, Class Counsel conducted countless interviews with Plaintiffs and opt-in Plaintiffs to determine the nature of the alleged illegal conduct, Defendant's policies and practices, and the damages applicable to the Class.

Through informal discovery, each party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

     *ii.*     ***Serious questions of law and fact exist, placing the ultimate outcome of this action in doubt.***

   To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Plaintiffs believe that their claims are strong, but recognize that success is not guaranteed. With respect to the merits of Plaintiffs' claims, Plaintiffs believe that they would prevail in demonstrating that the CSRs perform compensable off-the-clock work on a daily basis, that said time is not *de minimis*, and that they could pursue their off-the-clock claims on a class wide basis. Defendant, however, contends that the CSRs do not perform compensable off-the-clock work, and that to the extent any such time does exist it is *de minimis* and cannot form the basis for a valid claim. Finally, Defendant is confident that Plaintiffs would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine whether each CSR performs off-the-clock work and how much off-the-clock time is incurred by each CSRs. Nonetheless, while Defendant believes that its defenses are strong, it recognizes that it may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

   Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Second, there is legal dispute as to the validity of "gap-time" damages in work weeks where the CSRs did not work 40 or more hours. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

"Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA, v General Motors Corp.,* 238 F.R.D. 583, 596 (E.D. Mich 2006). To say the least, Defendant would continue to vigorously defend this case through trial. Because of the complexities in identifying the specifics as to the off-the-clock work, attributing responsibility for the technical issues under the law, the outcome of a potential trial is uncertain should the case go forward. Given that the Settlement provides substantial and immediate relief without these additional expenses and long delay, this factor militates in favor of settlement. *See, e.g., Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (concluding that "[d]elay, not just at the trial stage but through post-trial motions and the appellate process would cause Class Members to wait years for any recovery"). This, of course, is not to mention any appeals of class certification under Rule 23(f) or the final orders and judgment. Moreover, the present proposal achieves these benefits on a *class-wide* basis while eliminating the potential pitfalls of trial, or even multiple trials, in the face of Defendant's vigorous objections.

### iii.    *The value of immediate recovery outweighs the possibility of any future relief.*

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties will engage in additional discovery, including depositions of numerous Defendant witnesses (including multiple 30(b)(6) designees), each of the Named Plaintiffs, and dozens of opt-in Plaintiffs. The parties

would also have to engage in extensive motions practice including briefing and arguing Motions for Final FLSA Conditional Certification, Motions for Class Certification, Defendant's Motion to Decertify, and potential summary judgment motions. Ultimately, trial would include testimony by representatives of the Defendant including payroll and human resources employees, Defendant's supervisors, Defendant's upper management, Named Plaintiffs, opt-in Plaintiffs, Class Members, and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. (Exh. B, Stoops Decl. at ¶ 50). Moreover, natural attrition factors would come to bear on the class such that any ultimate relief obtained would likely not apply to thousands of class members.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendant which could impact Defendant's financial viability, leaving nothing for the Class Members to recover. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved. *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial . . . . Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

iv.    *Counsel believe the settlement is fair and reasonable.*

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

Based on the foregoing, the Settlement is clearly fair, adequate and within the range of possible final approval such that it is reasonable. As described above, the proposed settlement provides a significant remedy - $2,500,000 - on a *class-wide basis* to Class members who may not attain any benefit whatsoever absent the proposed settlement.

To evaluate and negotiate settlement and take part in mediation, Class Counsel prepared a time consuming and complicated damage analysis of all claims at issue in this case. By way of that analysis, and a thorough analysis of the applicable law, Class Counsel ascertained that the $2,500,000 Gross Settlement Fund equates to approximately 66.99% to 100.4% of the $2,487,704 to $3,731,556 of Defendant's maximum alleged damage exposure (based on the 4 to 6 minutes per shift that is recovered in the vast majority of call center settlements). (Exh. B, Stoops Decl. at ¶ 59). As such, the Settlement is substantial, completely reasonable, and marks a fair compromise of the claims. (*Id.* at ¶ 60).

Finally, the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." quoting *Granada Inv., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992). The Settlement here is consistent with the public interest because it provides substantial unpaid wages claim relief for the Class Members in a timely manner and conserves scarce judicial resources.

When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

**B.     THE SETTLMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a) AND (b)(3) FOR PURPOSES OF FINAL CERTIFICATION**

Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues" and serves various "important objectives," such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig,* 55 F.3d 768, 783-84 (3d Cir. 1995). "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Id.* at 784 [quotations omitted].

**1.     Rule 23(a)(1)'s Numerosity Requirement is Satisfied**

The numerosity requirement is met if the class is so large that joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1). "'Impracticable' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class . . ." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, 2006 WL 2642528, at *4 (N.D. Cal.

Sept. 14, 2006) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir.1964)). "There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Gianzero v. Wal-Mart Stores, Inc.*, 2010 U.S. Dist. LEXIS 38426, 6-7 (D. Colo. Mar. 29, 2010).

Here, there are nearly 22,000 Class Members, satisfying the numerosity requirement. In a similar case, a Court in this District found the joinder of between fifty and three hundred pizza delivery drivers to be impractical. *Bass v. PJCOMN Acquisition Corp.*, 2011 U.S. Dist. LEXIS 58352, *6 (D. Colo. June 1, 2011). In another District of Colorado case, Judge Krieger found one hundred potential class members to be "a number that certainly prevents effective joinder here." *A-W Land Co., LLC v. Anadarko E&P Co. LP*, 2012 U.S. Dist. LEXIS 139241, 14-15 (D. Colo. Sept. 26, 2012). Where, "the individual claims are relatively small in relation to the cost of litigation" joinder of 177 restaurant workers is not practical. *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 395 (D. Colo. 2010).

## 2.      Rule 23(a)(2)'s Commonality Requirement is Satisfied

Fed. R. Civ. P. 23(a)(2) requires questions of law and fact to be common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). "[E]very member of the class need not be in a situation identical to that of the named plaintiff". *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Rather, "[c]ommonality exists if class members differ factually but challenge the application of a commonly-applied policy." *A-W Land Co., LLC*, 2012 U.S. Dist. LEXIS 139241, at*9.

Here, the primary questions of law and fact central to the claims against Defendant include:

a.  Whether Defendant employed the Class Members within the meaning of the applicable statutes, including the FLSA;

b.  Whether the pre-shift time the Class Members spend on start-up and log- in activities each session is compensable time;

c.  Whether the post-shift time the Class Members spend on log-out activities is compensable time;

d.  Whether the Class Members are owed wages (above the federally mandated minimum wage and overtime due under the FLSA) for time spent performing pre-shift, mid-shift, or post-shift activities, and if so, the appropriate amount thereof;

e.  Whether Defendant's non-payment of wages resulted in its unjust enrichment;

f.  Whether Defendant violated any other statutory provisions regarding compensation due to the class members; and

g.  Whether the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

### 3.  <u>Rule 23(a)(3)'s Typicality Requirement is Satisfied</u>

To satisfy the typicality requirement Fed. R. Civ. P. 23(a)(3), the Named Plaintiffs must show that their claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *In re Qwest Savings and Investment Plan ERISA Litigation*, No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at *14-15 (D. Colo. Sept. 24, 2004). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, the Named Plaintiffs meet the typicality requirement because they allege that they,

24

and the many other CSRs employed by Defendant, were not paid wages and overtime because of Defendant's company-wide and uniform policy of failing to pay for certain off-the-clock work. Named Plaintiffs' legal claims are typical of those of the Class as a whole because they apply the same legal theory to the same policies and practices.

### 4.    Rule 23(a)(4)'s Adequacy Requirement is Satisfied

Fed. R. Civ. P. 23(a)(4) requires that the representative parties to a class action fairly and adequately protect the interests of the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez*, 268 F.R.D. at 396- 397 (internal citation omitted). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002)(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration…" *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

The adequacy of representation requirement is met here. Named Plaintiffs understand and accepted the obligations of class representatives, and have adequately represented the interests of the putative class. Indeed, Named Plaintiffs have devoted much time and effort in prosecuting the class claims and assisting their counsel with investigating and litigating the case.

Named Plaintiffs also retained experienced counsel who routinely handle numerous FLSA

collective and wage and hour class actions, typically as lead counsel. (Exh. B, Stoops Decl. at ¶¶ 4, 8, 11).

### 5.    Rule 23(b)(3) is Satisfied

Here, Plaintiffs seeks final class certification under Rule 23(b)(3), which provides:

> A class action may be maintained if. . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"[Rule 23(b)(3) encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Notes of Advisory Committee on Rules, 1966 Amendment.  Class actions may be certified where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means of adjudicating the controversy.  The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication.  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).  Although Fed. R. Civ. P. 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues.  *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance."  *Hochschuler* v. *G.D. Searle & Co*., 82 F.R.D. 339, 348- 49 (N.D. Ill. 1978); *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class").  Rule 23(b)(3) does not require that all questions of law or fact be common.  *See In re Telectronics Pacing Sys.*, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).

Here, the alleged company-wide pay policies affected the claims of Defendant's current

and former CSRs. Thus, while there may be some variation among individual Class Members' claims (*e.g.*, the actual amount of damages), common questions of law and fact predominate for settlement purposes. Named Plaintiffs maintain that these issues present common operative facts and common questions of law which predominate over any factual variations in the application of the classification and compensation policies to individual home-based agents.

The Court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). Here, as in *Hanlon*, the alternative methods of resolution are individual claims for relatively small amount of damages. These claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* The Settlement Agreement provides the class members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured class member will obtain necessary and timely relief at the conclusion of the litigation process. The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. Litigation costs for nearly 22,000 individual claims would surely surpass the average recovery for each class member. For these reasons, the proposed Settlement Class should be certified.

### C.     <u>THE STANDARD FOR FLSA SETTLEMENT APPROVAL</u>

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be ...." 29 U.S.C.§ 216(b).

FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55; *see also Latham v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 16490, *3 (M.D.N.C. Jan. 14, 2014). For all of the foregoing reasons analyzed under Rule 23 standards, this settlement is a fair and reasonable compromise and should be approved under the appropriate FLSA standards.

## 1.     The settlement warrants court approval under the FLSA

In determining whether a FLSA collective action settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e). *See Thompson v. Qwest Corporation*, 2018 WL 2183988, at *1 (D. Col. May 11, 2018). For all of the reasons set forth in the above Rule 23 analysis, this settlement is a fair and reasonable compromise and should be approved under the appropriate FLSA standards.

In addition to providing a substantial financial benefit to the Class Members, the Settlement provides numerous benefits to Defendant's ongoing employees and serves to further implementation of the FLSA as a whole. The purpose of the FLSA is to protect workers from employment agreements that may not work out in their best interests but that, because of lack of bargaining power, they have no choice but to accept. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer

28

and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency . . . .”). The Settlement reached by the parties certainly promotes these goals.

*First*, the Settlement promotes vindication of employee rights for those who have claimed to have suffered wage payment violations working for Defendant or similar wage payment violations at the hands of other employers in the call center industry. Notably, the Settlement is not “confidential” and has been filed as part of the public record. *See Brooklyn Savings Bank*, 324 U.S. at 704-08 (1945) (recognizing the “public—private” nature of an employee's FLSA rights; although “conferred on private party, [FLSA rights] affect the public interest.”). *Second*, although Defendant admits “no wrongdoing, paying the amounts agreed upon in the Settlement Agreement will, or should, encourage future compliance with FLSA obligations.” *See Wingrove v. D.A. Techs., Inc.*, 2011 U.S. Dist. LEXIS 153759 at *7 (N.D. Ga. Feb. 11, 2011).

Additionally, there can be no question that the putative class members of the Settlement Class are “similarly situated” and maintain the same claims for Defendant’s alleged FLSA violations. In this regard, each of the class members are hourly CSRs who worked for Defendant during the Class Period. Further, at the beginning of each shift each of the CSRs were required to perform alleged off-the-clock work, including: starting computers, establishing a connection with Defendant’s virtual private network (“VPN”); opening and loading multiple programs necessary to perform their work; and logging into Defendant’s timekeeping system. Then at the end of the workday, the CSRs conducted a similar process to close the programs and restart their computers. Thus the Class Members are “similarly situated” under the FLSA.

## D. THE BEST PRACTICABLE NOTICE OF SETTLEMENT HAS BEEN PROVIDED TO THE CLASS

The mailing of the Class Notice and exclusion forms to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members. *See e.g., Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the exclusion, objection, and approval process.

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. *See Lucas*, 234 F.R.D. at 696. Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001). These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

## IV.  CONCLUSION

The Settlement will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation.

Because of this reason, and because the Settlement is fair, reasonable, and an adequate resolution of this litigation, the Parties respectfully request that the Court approve the Settlement and enter an Order and Judgement Granting Plaintiffs' Motion for Final Approval of Settlement, and Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, Settlement Administration Fees, and Class Representative Service Awards. (A copy of the Proposed Order is attached as Exhibit D).

Date: October 21, 2025                          Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Alana Karbal (P82908)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for the Plaintiffs and the Putative Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will automatically send notice of such filings to all counsel of record.

*/s/ Kevin J. Stoops*
Kevin J. Stoops